HENRY CLINEFELTER and MARY CLINEFELTER, Plaintiffs in Error, *v.* BURTON AYERS, Defendant in Error.

ERROR TO LA SALLE.

Under the statute of wills, the real estate of a decedent is liable for his debts and funeral expenses, as a secondary fund; and a will, charging these upon the realty would not make it otherwise, unless the intention to change the legal order of liability was very clear.

Where, by will, it is directed that all debts and funeral expenses shall be paid as soon as possible after the death of the testator, out of the first moneys that should come into the hands of the executors, from any portion of the estate, real or personal, and legacies are made in the same will, and the lands are not devised to the executors, but a power is given them to sell generally, at their discretion, without expressing any object for the sale, or directing any application of the proceeds, and the personalty is sufficient for the payment of debts, etc., the lands will descend to the heirs, subject to sale or incumbrance, at the discretion of the executors. Such a power, if there had been an appropriation, etc., of the lands, differing from that made by law, would be coupled with an interest or trust; but where no person or interest is made to arise or depend upon its exercise, it is a naked power.

Courts will uphold rights derived from the proper exercise of this power, but will not compel an exercise of it.

One of several executors to a will cannot exercise a power of sale under it, unless it is shown that the others refused to act, and such refusal must be shown positively and affirmatively.

A bare recital in the entry of a ministerial act of the Judge of Probate, that a part of the executors decline to act, is not sufficient.

An executor may decline to act for a time, and still remain executor, with power to qualify.

The statute of wills, has not repealed all the English statutes relating to that subject; the principles of chapter 4, of the statutes of 21 Henry VIII, are still in force.

THIS was an action of ejectment, heard before LELAND, Judge, at November term, 1853, of the La Salle Circuit Court.

It was argued upon the record, that Samuel Lapsley died seized in fee of the premises sued for; that Mary Clinefelter is one of his heirs at law, and, had Lapsley died intestate, would have been entitled to one equal, undivided eighth part of said premises by descent, and that defendant below was in possession of the premises claiming title; that Lapsley made his will, which was duly proven and recorded; that Burton Ayres (the defendant) and William Waddingham, two of the persons named as executors in said will, declined to act, and that letters testamentary, on the 6th of September, 1839, were duly issued to John Faughander, the other executor named in said will, and he was duly qualified as such sole executor, and that Ayres and Waddingham were both alive at the time the letters to Faughander were issued, and at the time of the conveyance by the latter, and that they never qualified as executors; that in October, 1841, Faughander, as executor of Lapsley, conveyed to John and Mary Swanson, and that Burton Ayres held by regular chain of conveyance from them. The substance of the will is stated in the opinion of the court. Proof was taken to show that there were not any papers or proofs on file, that Ayres and Waddingham had declined to accept the executorship, except the order of said court, as stated in the opinion. The cause was heard by the court, without the intervention of a jury, and the issues were found for the defendant. The plaintiffs below bring the cause to this court. This cause was heard at June term, 1854, and decided at June term, 1855.

E. S. HOLBROOK, for Plaintiffs in Error.

DICKEY and WALLACE, for Defendant in Error.

SCATES, J. In ejectment, the plaintiffs deduced title to M. Clinefelter, as one of the heirs at law of Samuel Lapsley, deceased, and entitled to one eighth part of the premises.

The defendant claims title by purchase through John Faughander, one of three executors of Lapsley, and under his will.

By the will, Lapsley decreed: First. That all his debts and

funeral expenses be paid, as soon after his death as possible, out of the first moneys that should come into the hands of his executors, from any portion of his estate, real or personal.

Second. He gave a legacy of one thousand dollars to each of the three children of John Faughander, to be paid on the day of arriving at full age, or marriage, which should first happen; and in case of the death of either before age or marriage, then to the survivors; this sum to be put at interest, at the discretion of executors, and interest applied to their education and maintenance.

Third. A legacy of one thousand dollars to Julius Cleve.

Fourth. A legacy of one thousand dollars each, to five children of his sister, Mary Clinefelter, one of the plaintiffs; and in all other respects upon the same terms as the legacies to the Faughanders.

Fifth. He directed his executors, as soon as possible, after his decease, to sell all his personal property for good current money, " and that all the real estate of which I shall die seized or possessed, shall be sold by my executors, at any time when they may think proper, for its reasonable value, for like current money, or on such credit as they may think proper, and the amount thereof secured in such manner as is usual, in like cases, to insure the full and punctual payment thereof; and to effectuate this, my intention, I do hereby vest in my executors, full power and authority to dispose of my real estate in fee simple, or for a term of years, or otherwise, in as full and large a manner in every respect, as I could myself, if living."

And lastly, he appointed his friends, John Faughander, Burton Ayres and William Waddingham, his executors.

It is admitted that the will was duly proven; that Ayres and Waddingham declined to act, and have never qualified or acted, and that Faughander qualified, and letters testamentary issued to him alone, in 1839. It is also admitted that Ayres and Waddingham are still living.

In the entry in the probate court, in reciting the issuing of letters testamentary to Faughander, it states that it appeared, " that the persons named in said will as co-executors, decline acting."

In 1841, John Faughander, as executor, sold the premises in controversy, for fifteen hundred dollars.

One of the legatees was sworn, and testified that his legacy was not paid; that he was of full age, and that he knew of no personal property of the estate. But there is no other proof than this want of knowledge, as to what personal estate was left.

There is in the first clause of the will, a strong implication of a charge of the *debts* and *funeral expenses* upon the real

estate. But this can make no difference under our statute of wills, because the real estate is at all events liable for both as a secondary fund, and would not be otherwise, under a will charging all debts, expenses and legacies upon the realty, unless the intention was very clearly to change the legal order of liability. See on this branch of learning, Hill on Trust, 344, 348, 350, 352, 354, 358 to 364, Ed. of 1846.

*All* his debts and *funeral* expenses, were to be paid out of the *first* moneys that should come into the hands of the executors from *any* portion of his *estate, real* or personal. Legacies are not included in this direction, and there are no words such as " devise " instead of " bequeath," which latter is used in this will, or other provision, such as a general residuary bequest of real estate, or the funds produced from its sale, from which an implication could be raised for charging these legacies on the real estate.

It may therefore be contended that the legacies given by this will are not charged upon the land, nor payable out of its proceeds when sold. The lands are not *devised to* the executors, but a power is given them to sell generally, when the executors think proper, without expressing any object for the sale, or directing any application of the proceeds, either in paying debts, expenses, legacies, or for investment, or otherwise.

Here the power is expressly, and very fully given. In the event it became necessary to exercise it, on a deficiency of the personalty, for the payment of the debts and funeral expenses, it would be in connection with a trust for creditors. Had such a state of facts been presented as required a sale for these purposes, I should look at its exercise through the medium of creditors' interests, and feel more disposed to a liberal construction in sustaining its exercise. But I presume the personalty was not only sufficient to pay debts and funeral expenses, but also to pay the legacies ; for the proof in the record does not negative this presumption.

The lands, therefore, descended to the heirs at large in the meantime, subject to be incumbered by lease, or mortgage ; or divested by sale of the executors, in the exercise of this discretionary power. But it is a naked power, in the event of the debts, etc., being paid out of the personalty ; for the same persons take, and take in the same right as heirs, the lands, if the power is not exercised ; the proceeds, if it is.

Had there been an application, appropriation or designation of the lands, or their proceeds, differing from that made by law, I should hold, according to the true and sound distinctions I gather from the current of authorities, that the power was coupled with an interest, or a trust. But where a power is

given, and no person or interest is made to arise or depend upon its exercise, other than it creates by its exercise, it is a naked power.   Although courts will uphold rights derived from its proper exercise, equity will not compel its exercise, but leave it to the option of those who possess it.   Such powers, at the common law, required all the parties to join in its exercise, and such would not survive.   1 Sug. on Pow. 143 to 148, (1 Law Lib. 156 to 159); 4 Bacon's Abr. Executors and Administrators, D., 37, 38, 39; 2 Williams an Executors, 814, 815; *Cole* v. *Wade*, 16 Ves. R. 27; *Townsend et al.* v. *Wilson*, 1 Barn. and Ald. R. 608, (4 Eng. C. L. R. 289); *Forbes* v. *Peacock*, 11 Mees. and Welsby, 630; *Franklin* v. *Osgood*, 14 John R. 553; 2 Denio R. 69, 430; *Taylor* v. *Morris*, 1 Comst. R. 346; 4 Kent's Com. 320 to 334; *Peter* v. *Beverly*, 10 Pet. U. S. R. 563; 1 McLean R. 197; *Taylor et al.* v. *Benham*, 5 How. U. S. R. 267; *Zebach* v. *Smith*, 3 Binn. R. 72; *Heron* v. *Hoffner et al.*, 3 Rawle, 393; *Taylor et al.* v. *Galloway et al.*, 1 Ohio R. 104; *Geddy et al.* v. *Butler et al.*, 3 Munf. R. 345; 4 Ibid. 332; *Miller* v. *White*, Taylor's Conf. R. 309, N. C.; *Wooldrige's Heirs* v. *Watkin's Executors*, 3 Bibb R. 349; 7 Dunn. R. 1; 2 Litt. R. 109; 3 J. J. Marsh. R. 246; *Coykendall et al.* v. *Rutherford's Executors*, 1 Green N. J. R. 360; *Seymour* v. *Bull*, 3 Day R. 388; *Shelton* v. *Homer et al.*, 5 Metcalf R. 462.

The doctrine of survivorship was settled so as to preserve all interests depending upon powers, as far as it could be done upon principle.   The statute, 21 Hen. VIII, Cap. 4, aided cases where part *refused*.   This act we have adopted, and added a general principle of survivorship.   New York added thereto *neglect*, and Virginia has extended the survivorship to administrators.   This last provision is held not applicable under our statute; *Hall* v. *Irwin et al.*, 2 Gilm. R. 179; and upon the same reasoning, *neglect* is equally without the intent of our statute; and a party claiming under a power by conveyance from one, while others are in full life, must show that they have *refused* by renouncing, instead of " declining."

The question presented upon the record, is a question as to the power of one of several executors to execute a power of sale in the will, while the others are living, and we may consider it in the two-fold aspect, that they have, and that they have not, declined to act under the will.

After the Conquest, fee simple lands were alone, and by custom, devisable by will, until the 32 and 34 Hen. VIII.   So the custom authorized a devise of the land to executors to sell, or a power of sale without a devise of the estate.   But at the common law, all the executors were required to join in the execution of the power of sale, which would not survive in case of

the death of one, if it were a power without an estate. 1 Coke'sLitt. Secs. 167, 168, 169, p. 112, and *a*, *b*, top 2 Am. Ed. 1836, 310, 311; 1 Sugd. on Pow. 129, 130, 143, 144, 145.

A like difficulty in the execution of the will, occurred when one refused to take upon himself the executorship.

By the 21 Hen. VIII, Cap. 4, this difficulty was in part removed, by a provision which authorized the qualified and acting executors to sell, where the others had *refused* the trust, and this, by construction, was extended, as well to devises of the estate to the executors, as to mere powers of sale within the letter of the statute. 1 Coke's Litt. 113, *a*, top p. 2, Am. Edition, 1836, 312, 313.

The power to devise by will generally, has been given in most, if not all the States, and is, by our statute, in the broadest and most comprehensive terms. Rev. Laws, 1845, p. 536, sec. 1.

So, too, many of the States, like our own, have adopted provisions to obviate the common law disability, of a part only of the executors executing a power of sale. But these provisions differ more or less, both in the terms and extent of the statutory power conferred. Want of strict attention to these differences may have introduced more or less confusion in understanding the decisions of the different States.

By 21 Hen. VIII, Cap. 4, where lands are willed to be sold by executors, and part of them *refuse*, those who qualify may sell. 1 Coke's Litt. 113 *a*, top p. 313, 2nd Am. Ed. 1836. It does not provide for cases of death or survivorship. 4 Bacon's Abrid. *Title*, Executors and Administrators, D. p. 39, Ed. 1846.

This has been adopted in New York as to executors, but in other cases of powers, the *survivors* or *survivor* may execute the power. The English rule in relation to these was settled without statute, upon general principles applicable to the nature of the property, title or interest to be affected by the power. 2 Williams' Executors, 817, 818; 4 Kent's Com. 311, 325, 326. New Jersey has provided for both a refusal and death of executors. 1 Green Ch. R. 362. Kentucky has adopted the English statute substantially, and without regulation of powers generally. 3 Bibb R. 351; 7 Dana R. 8, 9. Same in Virginia. 3 Munf. R. 349. So, it would seem, in Pennsylvania. 3 Binney R. 73; Massachusetts, 5 Metcalf R. 465; Ohio, 1 Ohio R. 105, and N. Carolina, Taylor's Conf. L. and Eq. R. 135, 136, 137.

Our general statute, adopting the common law, embraced this statute of 21 Hen. VIII, Cap. 4, and the statute of wills, 32 and 34 Hen. VIII. Rev. Laws, 1845, p. 337, sec. 1.

The legislature subsequently passed a general act, very comprehensive in its provisions, and minute in its details, embracing the subject of testaments, intestacies and administrations, by

the 93rd section of which, it is provided, that "in all cases where power is or may be given in any will, to sell and dispose of any real estate, or interest therein, and the same be sold or disposed of in the manner and by the persons appointed in such will, the sales shall be good and valid; and where one or more executors shall depart this life, before such sales be made, the survivor or survivors shall have the same power, and their sales shall be good and valid, as though they all joined in such sale." Rev. L. p. 556, sec. 93. No provision is found in this act, for the execution of the power by those who qualify, when the others *refuse*, as by 21 Hen. VIII, or neglect, as in the New York statute. 1 Comst. R. 349; 2 Denio R. 69; 15 Wend. R. 612. If the act of 21 Hen. VIII, be in force still, both contingencies, refusal and death, are almost as broadly provided for as in New York.

It is contended that this act is a general one, intended and embracing the whole subject matters of the common law and English statutes, and must, therefore, by necessary implication, repeal not only all acts contrary and repugnant to, and inconsistent with it, but all others on the same subject, because of the manifest intent shown to make full regulations of all things relative to these subjects. While I admit the doctrine of repeal by implication, for repugnancy and inconsistency, I cannot admit the other branch of it by implication, as applicable to these subjects, full, complete and perfect as these new regulations may be, and for the satisfactory reason that they do not contain sufficient to constitute a perfect system of law on these subjects. But we are compelled constantly to resort to the principles of the common and ecclesiastical law, to administer the principles of the statute.

There is no repugnancy, but simply an omission in the act of Wills, of the principles of the statute 21 Hen. VIII, Cap. 4.

It is a salutary, remedial provision, which we can see no reason for, nor should we favor a repeal of it by implication, drawn from subjects in which there is no analogy.

I must regard the statute, 21 Hen. VIII, as in force, and this record must show satisfactorily that Ayres and Waddingham refused the executorship, to authorize Faughander to sell and convey alone. It is not a case of survivorship, under the 93rd section of the statute of wills, but a case of *refusal* under the 21 Hen. VIII. Evidence of neglect to qualify, or assume the duties of executor, will not satisfy this statute, and this was very clearly so understood, when it was added by statute in New York, to the refusal of the English act. 2 Rev. Stat. N. Y. 109, sec. 55; 1 Comst. R. 349.

The only evidence offered to show the refusal, is a recital in an entry, made when Faughander applied for letters testamentary, " It appearing that the said Lapsely is dead, that the persons named in said will as co-executors, decline acting, and that the said applicant is entitled to letters, as sole executor of said will." Is this sufficient? The will had been proven and established long before, and the probate by one was good for, and enured to all. 1 Williams' Executors, 302; 3 Barn. and Ald. 363.

The issuing letters was a mere ministerial act. Faughander was entitled to letters when he applied, whether the others chose to come forward or not. We are not informed that any citation issued, that any inquiry was instituted, or any renunciation, refusal, or communication from the other executors made to the court. They may " decline acting," and still remain executors, with right and power to qualify at another time, and a future day. 1 Williams' Executors, 234, 313.

Do they " refuse" the trust and executorship, and how shall it be made appear? Other sections of the same act throw some light on this refusal. Upon " a failure or refusal " of a party having custody of a will, to deliver it to the court of probate, the party shall be fined. Sec. 18. Where there shall be no executor appointed, or the one named shall " die, refuse to act," or be otherwise disqualified, the court may appoint administrator with the will annexed. Sec. 19. There should be more than negative acts or mere omissions. He should renounce, should come before or write to the court, or declare in some way, by refusing to obey citation, etc., before an administrator could be appointed.

Again, by sec. 20, every executor, knowing of his appointment as such, shall, within thirty days after the testator's death, cause the will to be proved and recorded, " or *present* such will and *declare* his *refusal* to *accept* of the executorship," and every executor " so neglecting his trust and duty as aforesaid, without just excuse for such delay," shall forfeit $20 per month from and after the thirty days, " until he shall *cause probate* of said will to be made, or *present* the same as aforesaid." The observation I would make upon this, is that the rights and powers of executors, derived from the choice and confidence of the testator, are not within the power of the probate court. They may forfeit for neglecting them, but can only lose them by voluntary refusal or renunciation. He is not removable for neglect. He may decline acting without refusing the trust and duty, but will have the right, at any time, to come in and qualify.

Again, in sec. 21 it is upon *refusal* of the executor, that administration shall be granted to the widow or next of kin,

and, upon " their refusal," to others. Upon neglect to come or send, they should be cited to come and *refuse*, and this means renounce, for in sec. 25 it is so explained. Where two or more are appointed in the same will, and one, or more, " die, refuse to take, etc.," upon him or herself such executorship, letters shall be granted to the one " not renouncing." Such are the provisions, and in accordance with the whole current of authorities in relation to rights, duties and powers of executors. It requires positive and affirmative acts to divest themselves of, and part with those rights, duties and powers conferred, not by the law, but the act and will of the testator. 1 Williams' Executors, 234, 235. See *Harrison* v. *Harrison*, 2 Roberts' R. 406.

I am by no means satisfied with the quantum and sufficiency of the evidence of so recent a transaction, afforded by a bare recital in the entry of a ministerial act of the judge of probate. The courts in Pennsylvania require this evidence to be shown by the records and files of the court, (*Heron* v. *Hoffner et al.*, 3 Rawle R. 396,) conformably to the practice in the ecclesiastical courts. It is put upon the ground that they derived with the provision itself, a legal import in the terms, and that it best comports with the certainty and security of titles to realty, by preserving written evidence of those acts and facts upon which the title depends. This had been clearly intimated as the rule in commonwealth use. *Huston et al.* v. *Mateor et al.*, 16 Serg. and Raw. R. 418. This last is referred to and approved, and a refusal or renunciation by act *in pais*, disclaimed in *Stebbins* v. *Lathrop*, 4 Pick. R. 43, 44.

Chief J. Bronson, in *Roseboom* v. *Mosher*, 2 Denio R. 70, sanctioned this as the sound rule in requiring an express renunciation, and would have so decided, had it been an open question in New York. But under their statute, which included cases of mere *neglect* to qualify or prove the will, it had been ruled otherwise. See also for New York rule under their State an approval of this case. 1 Comst. R. 349, 350.

The rule I consider to be well established in England, not only by the practice of the ecclesiastical courts, but by decision, notwithstanding the *dictum* of Holroyd, J., in *Townson* v. *Tickell*, 3 Barn. and Ald. R. 31, (5 Eng. C. L. R. 221,) that it would not be necessary to be, either by matter of record or by deed. In that case the renunciation was by deed. In *Long et al.* v. *Symes et al.*, 3 Hagg Eccl. R. 771, (5 Eng. Eccl. R. 266), the rule is very strongly laid down, " that the refusal must be recorded in court ; till that was done, no one could take administration ;" " the refusal cannot be by word only, it must be entered and recorded in court." That it cannot be by mere words, or other matter *in pais*, is well supported by authorities.

22

1 Williams' Executors, 234, 235 ; 4 Bacon's Abridg. Executors and Administrators, E, 9 ; *Henloe's Case*, 9 Cok. R. 36.   *Rawlinson* v. *Shaw's Executors*, 3 Term R. 558, is, if an exception, one from necessity, that a creditor must be shown to have accepted an appointment of executor, before he shall be denied a right of action against the other executors.

In Virginia and North Carolina a different rule prevails, but the renunciation may be by acts *in pais*, and will, under circumstances, be presumed.   *Geddy* v. *Butler*, 3 Munf. R. 345 ; 4 Ibid. 341 ; *Miller* v. *White*, Taylor's Conf. L. and Eq. R. top 135, marg. 309.

Whatever the character of proof, it should, at least, be satisfactory and conclusive, and more especially in cases of naked powers, where greater strictness is required, than where the power is coupled with an interest or trust.   5 Howard's U. S. R. 233.

Judgment reversed and cause remanded for a new trial.

*Judgment reversed.*