BURTON AYRES, Appellant, v. FINDRE CLINEFELTER, Appellee.

APPEAL FROM LA SALLE.

The granting of letters testamentary, under the act of 4th March, 1837, which provides for the election of probate justices of the peace, was a ministerial act; and it is competent to prove, by other than record evidence, that some of the persons named in the letters testamentary, refused to act as executors.

THIS was an action of ejectment, originally commenced in the Circuit Court of La Salle county, at the November term, 1852, by Henry Clinefelter and Mary Clinefelter, his wife, against Burton Ayres. The declaration was in the usual form, claiming one undivided ninth part of a certain tract of land, being a part of the north-west quarter of sec. 14, T. 33 N., R. 1 E., 3rd P. M., bounded as follows : " Commencing at a point on a line dividing sections fourteen and fifteen of said township, nine hundred and twenty-eight feet north of the south-west corner of said section fourteen ; thence north seven rods and a half ; thence east three hundred and sixty feet; thence south seven rods and a half, (to the north-east corner of lot one, block two, of Lapsley's addition to La Salle); thence west to the place of beginning ; which said plaintiffs claimed in fee, as the property of the said Mary Clinefelter."

The second count claimed one undivided eighth part of the same premises.

The defendant Ayres pleaded the general issue.

At the November term, A. D. 1853, of the La Salle Circuit Court, the cause was tried, and a verdict and judgment rendered for the defendant. The case was brought to the Supreme Court, and argued at the June term, 1854, and the judgment reversed, and the cause remanded. The case is reported in 16th Ill. R., page 329.

" STATE OF ILLINOIS, La Salle County : In the Circuit Court thereof—Vacation after the May term, A. D. 1855 :

" The declaration of Findre Clinefelter, filed by leave of the court, by way of amendment to the original declaration, in suit in ejectment in said court, entitled, Henry Clinefelter and Mary Clinefelter, his wife, v. Burton Ayres; said Mary Clinefelter having deceased, and said Findre Clinefelter, being the son and heir at law of said Henry and Mary Clinefelter. And now comes the said Findre Clinefelter, by E. S. Holbrook, his attorney, and by leave of the court first obtained, and according to the statutes in such case provided, the death of the plaintiff, Mary Clinefelter, having been suggested, substitutes his own name as plaintiff, in the place of the said Henry and Mary

Clinefelter, as the son of the said Mary Clinefelter, and heir at law of one-sixth of the real estate of which said Mary Clinefelter died seized; and as such heir, successor to the title of said plaintiff, as to the one undivided sixth thereof, of the premises described in the original declaration, filed in said cause, and the several counts thereof."

At the February special term of the La Salle Circuit Court, 1857, the cause came on for trial; a jury was waived, and the cause submitted to Hollister, Judge of said court.

The plaintiff offered in evidence an agreed state of facts, as follows:

That both parties claim title from Samuel Lapsley, now deceased, who died in said county, June 21, 1839, seized of the premises sued for.

That Findre Clinefelter is one of the heirs at law of Lapsley, and as such, had Lapsley died intestate, would have been entitled to one undivided forty-eighth part of said premises, by descent; and that the defendant Ayres was in possession, claiming title at the time of the service of declaration and notice in this cause.

That Lapsley, prior to his death, and while of sound mind, executed, published and declared, as his last will and testament, the following, viz:

" I, Samuel Lapsley, of the county of La Salle, and State of Illinois, do make and publish this my last will and testament, hereby revoking and making void all prior wills by me at any time heretofore made.

" First, I direct that all my debts and funeral expenses be paid as soon after my decease as possible, out of the first moneys that shall come into the hands of my executors, from any portion of my estate, real or personal.

" Also; I give and bequeath to Benjamin Faughander, Julia Ann Faughander, and Emily Faughander, children of John. Faughander, of said county of La Salle, the sum of one thousand dollars each, to be paid to them respectively, at their respective ages of twenty-one years, or days of marriage, which shall first happen; the same to be kept out to interest, at the discretion of my executors, and the interest accruing thereon to be applied to their education and maintainance, respectively, until their said respective ages or marriages; and if either of them shall die before the age of twenty-one or marriage, then I give the share of the one so dying, unto the survivors of them.

" Also; I give and bequeath unto Julius C. Coe, the sum of one thousand dollars, as well for the respect which I bear toward him, as for his kindness and attention to me during sickness.

" Also ; I give and bequeath to Martha Clinefelter, Margaret

Clinefelter, Findre Clinefelter, Eliza J. Clinefelter, and Lucinda Clinefelter, children of my sister, Mary Clinefelter, the sum of one thousand dollars, each, to be paid to them, respectively, at their respective ages of twenty-one years, or days of marriage, which shall first happen; the same to be put out to interest, at the discretion of my executors, and the interest accruing thereby to be applied to their education and maintainance, respectively, until their said respective ages or marriages; and if either of them shall die before the age of twenty-one years or marriage, then I give the share of the one so dying, unto the survivors of them.

"Also; I direct my executors to sell and dispose of, as soon as may be, after my decease, all my personal property, for good current money; and that all the real estate of which I die seized or possessed, shall be sold by my executors, at any time when they may think proper, for its reasonable value, for like current money, or on such credit as they may think proper; and the amount thereof secured in such manner as is usual in like cases, to insure the full and punctual payment thereof; and to effectuate this my intention, I hereby vest in my executors full power and authority to dispose of my real estate, in fee simple, or for a term of years, or otherwise, in as full and large a manner, in every respect, as I could myself do if living.

"And I do hereby make and ordain my friends, Burton Ayres, John Faughander and William Waddingham, executors of this my last will and testament."

Signed and sealed, March 26, 1839, and witnessed by Lorenzo Leland and Aaron Gun.

And that Lapsley never afterwards revoked or in any manner altered said will.

That said will was duly proven, and recorded in the office of the Probate Court of La Salle county, on the 28th day of June, 1839.

That Ayres and Waddingham, two of the persons named as executors in said will, never took out letters testamentary on said will; and that letters were issued by the Probate Court of said county, to John Faughander, the other person named as executor in said will; that Faughander was qualified as sole executor; and that Ayres and Waddingham were both alive at the time of the issuing of said letters to Faughander, and at the time of the conveyance by Faughander, hereinafter stated; and that they [Ayres and Waddingham] were in no wise legally disqualified from acting as executors.

That on October 2nd, 1841, and after Faughander had been qualified as executor, and while he held that office, he, as such executor, executed, acknowledged and delivered to John and Mary Swanson, a deed of the premises in controversy, and that afterwards, sometime in the year 1846, John and Mary Swanson,

duly conveyed by deed to Burton Ayres, whatever title they obtained by the deed from Faughander to them.

The defendant then offered in evidence the will of Lapsley, above set out, and the probate thereof.

The defendant called *Samuel W. Raymond,* as a witness, who testified that he was county clerk, and keeper of the records of the probate office of La Salle county. A book was shown witness, which he testified was the record book, or book of entries, of the Probate Court of La Salle county, for 1839. The defendant then offered in evidence an entry in said book, as follows:

" *September 6th,* 1839.

" John Faughander, Executor of the last Will and Testament of Samuel Lapsley, deceased. } *Application for Letters.*

" This day came the said John Faughander, one of the executors named in the will of the said Samuel Lapsley, deceased, heretofore proven and admitted to record, and made application for letters testamentary. It appearing that the said Lapsley is dead ; that the other persons named in said will, as executors, decline acting ; and that the said applicant is entitled to letters, as sole executor of said will ; and that the said applicant having filed in this office the requisite bond, with satisfactory security, letters testamentary are therefore granted to the said John Faughander."

The plaintiff, by his counsel, objected to the introduction of said order, but the court admitted the same, subject to be either considered or excluded, as the court might determine, on full consideration.

The defendant then gave in evidence the bond of Faughander, as executor.

The defendant then called *John V. A. Hoes,* as a witness, who testified that he was probate justice of La Salle county, in 1839, and that the entry of Sept. 6, 1839, above set out, was in his handwriting. A written memorandum, which had been previously proven by the witness Raymond, to be on file in the probate office, among the papers relating to Lapsley's estate, was here shown to witness Hoes, which memorandum is as follows:

"Letters testamentary—copy of will— with letters—

other executors named in will fail to qualify.

John Faughander sole executor.

ZACHARIAH MERRITT, DANIEL DIMMICK, MICHAEL LEONARD, } Appraisers."

This memorandum was indorsed as follows: "Mem. Sept. 6th, 1839."

The witness Hoes, after examining the memorandum, testified that it was in his handwriting; that the will of Lapsley was indorsed in his handwriting; also, the affidavit attached thereto; that he was acquainted with Burton Ayres and Faughander. Hoes also testified, that it was his best impression that Ayres and Waddingham did refuse to qualify, as executors of Lapsley's will; that this was his best recollection, gathered from the papers and memoranda made by himself, and from his general recollection of the transaction, and what occurred before letters were issued to Faughander.

Hoes further testified, that the general and usual practice of doing business in the Probate Court, in 1839, was this: When executors, administrators, or others, appeared before that court to transact business, the papers on file in the particular estate were taken down, and it was ascertained what was to be done, and a written memorandum made; and the memorandum was placed among the files, with the date of the transaction indorsed on it. The memorandum, with the files, were then tied together and laid away, to be entered on the record at leisure; and they were entered according to the dates. The memorandum, above set out, was such a memorandum of what was done in the matter of the Lapsley estate, on the 6th Sept., 1839. The memorandum above set out was then offered in evidence by defendant. Plaintiff objected; the court sustained the objection, and defendant excepted.

The witness Hoes also testified that his recollection was, that the personal estate of Lapsley was insufficient to pay the debts of the estate and the legacies. The inventory of said estate was shown the witness Hoes, and he testified that the words "good," "desperate," and "doubtful," on the margin of the inventory, were in his handwriting. He also testified that Faughander did pay some of the debts of the estate.

On cross-examination, Hoes testified that he derived his impression that Ayres and Waddingham refused to qualify, from the papers, and his general recollection of the transaction and his course of business as probate justice; that he may have been told by Ayres at the time, that he [Ayres] refused to act; that he did not recollect Waddingham; that he [Hoes] had reliable information of Ayres' and Waddingham's refusal to act, at the time he issued letters to Faughander, but could not now say how he received such information.

On direct examination resumed, Hoes testified that he had no doubt about the fact that he did receive his information of Ayres' and Waddingham's refusal to act from some other source

than from Faughander ; that he should be inclined to think that they [Ayres and Waddingham] appeared before him in person ; in that case no other memorandum would have been made than the one above set out.

*Philo Lindley* was then called, as a witness for defendant, and testified that he knew Lapsley, Ayres, Faughander, and had seen Waddingham. After Lapsley's death, witness was talking with Ayres, and told him he thought he ought to qualify as executor ; Ayres replied that Lapsley's business was so mixed up that Lapsley himself knew nothing about it, and he [Ayres] would not have anything to do with it. This was in 1839 or 1840, witness could not say which ; that he had a dozen conversations with Ayres on the subject, and he never heard Ayres express any different determination than that he would not serve as executor. Lindley further testified, that he had lived in the neighborhood where Lapsley lived and died, ever since 1836. The defendant's counsel asked Lindley " whether there was any general rumor in the neighborhood as to whether Ayres and Waddingham have refused to qualify as executors of Lapsley's will ?" Plaintiff's counsel objected to the question ; the court sustained the objection, and defendant excepted.

On cross-examination, Lindley testified that Waddingham was engaged in packing pork, and had some connection with a brick yard in St. Louis. He married Lapsley's sister, as witness understood. Mrs. Clinefelter, wife of Henry Clinefelter, was a sister of Lapsley's. Findre Clinefelter was a son of Mrs. Clinefelter.

*Lorenzo Leland* was then called, by defendant, and testified that in 1839 he practiced law in Ottawa ; was acquainted with Lapsley, who lived near Peru, and with Faughander and Ayres. He [witness] drew Lapsley's will, and was one of the witnesses thereto. He acted as attorney for Faughander, as executor. Thinks Ayres was at Lapsley's house when the will was drawn. His impression was, that there was not sufficient personal property belonging to Lapsley's estate to pay his debts ; that he was attorney for Lapsley three or four years previous to his death, and got his impression of Lapsley's personal estate and debts, from Lapsley himself, and from what he knew of the condition of the estate after Lapsley's death.

Witness was clerk of Circuit Court, and knew the fact ; was certain there was not sufficient of Lapsley's personal estate to pay the debts and legacies ; witness thought Ayres knew he was to be one of the executors when the will was drawn.

The defendant, after proving the identity of the papers next offered in evidence, by the witness Raymond, then offered in evidence :

1st. The inventory of the estate of Lapsley, showing debts due the estate to the amount of $3,770.33 ; the same above referred to in connection with Hoes' testimony.

2nd. An appraisement bill of said estate, showing personal property and real estate amounting to $353.50.

3rd. An account current, rendered by Faughander, as executor, to the Probate Court, in 1847, showing money received by him, (including the amount the land in controversy was sold for,) amounting to $2,249.70, and payments made by the executor, amounting to $1,438.81 ; showing a balance of $810.89 in the hands of the executor.

4th. An entry in the records of the Probate Court of said county, showing an approval of said account rendered, by the said Probate Court, May 13, 1847.

The defendant then offered in evidence, the deposition of John Faughander ; the plaintiff objected, because Faughander was interested ; but no exceptions having been taken to said deposition before trial, the court overruled the objection. Said deposition was then read in evidence, in which Faughander testifies, in substance, that both Ayres and Waddingham did refuse to act as executors of Lapsley's will.

The defendant then gave in evidence, the letters testamentary issued to Faughander.

The defendant then proved by the witness Raymond, that there was no evidence on the records of the Probate Court, that either Ayres or Waddingham ever applied for letters testamentary.

The defendant then gave in evidence, the deed from Faughander, as executor, to John and Mary Swanson, which is made a part of the agreed state of facts.

The plaintiff's counsel objected to all the oral testimony, or testimony of acts in *in pais*, as incompetent to show a refusal by Ayres and Waddingham to act as executors ; but the court admitted the same, subject to be either considered or rejected by the court, on full consideration.

The defendant here rested his case.

The plaintiff then called said Raymond, who testified that he had examined the records of the probate office, and found no evidence that any citation ever issued to Ayres and Waddingham, to appear and qualify as executors. He further testified, that there was nothing on record to show that Faughander had ever paid the legacies, and that he left the country in the spring or summer of 1848.

The court below decided that it was incompetent to prove that Ayres and Waddingham refused to act as executors, by any other than record evidence, or by a citation having issued to

them, or by their having renounced in writing; and on motion of plaintiff, the court excluded all the evidence of the witnesses, Hoes, Lindley, Leland, Raymond, Quigley and Faughander, on that subject; to which defendant excepted. The court also held, that the entry on the probate record, dated Sept. 6, 1839, did not show such refusal; and thereupon the court found the issues for the plaintiff.

The defendant moved the court for a new trial; which motion was overruled, and the defendant excepted.

The defendant then moved in arrest of judgment; which motion the court overruled, and defendant excepted.

The court then rendered judgment for plaintiff, that he recover one-forty-eighth part of the premises, describing them by metes and bounds; to which the defendant excepted.

DICKEY & WALLACE, for Appellant.

E. S. HOLBROOK, for Appellee.

BREESE, J. By the act entitled "An act to provide for the election of Probate Justices of the Peace," approved March 4, 1837, (Laws of 1837, page 176,) it is provided in the first section, that from and after the first Monday of August next, so much of an act, entitled "An act relating to Courts of Probate," approved Jan. 2, 1829, as relates to the establishment of courts of probate in the several counties, be repealed. Section 2, provides for an election to be held on the first Monday of August next, after the passage of the act, and on the first Monday of August, 1839, and every fourth year thereafter, for the purpose of electing one additional justice of the peace, for each county, to be styled, by way of eminence and distinction, the probate justice of the peace, of their respective counties. Section 3, gives them the same jurisdiction in civil cases as possessed by ordinary justices of the peace, allowing appeals and writs of certiorari from their proceedings. By section 4, jurisdiction is conferred upon them in all cases of debt and assumpsit, express or implied, when executors or administrators are parties, when the amount claimed on either side shall not exceed one thousand dollars.

By section 5, it is provided that in addition to these judicial powers, "they shall have, possess, and exercise, within their respective counties, the following ministerial powers, to wit: Power to administer all oaths or affirmations, concerning any matter or thing before them; to issue and grant letters of administration, letters testamentary, and letters of guardianship, and repeal the same; to take probate of wills, and record the

same; to determine the person or persons entitled to letters of administration, or to letters testamentary, and in general, to do and perform all things concerning the granting of letters testamentary, or of administration or of guardianship, which the judge of probate may do by the existing laws; to receive and file and record inventories, appraisement bills and sale bills, as is required by existing laws; to require executors, administrators and guardians to exhibit and settle their accounts, and to settle for the estates and property in their hands, and for that purpose, may issue citations and attachments into every county in the State, to be executed by the sheriff, etc.; and, finally, to do and perform all other acts of a ministerial character, which judges of probate could then perform in their respective counties.

The 6th section provides the mode by which their proceedings can be made matters of record, and the 7th vests them with all the judicial powers theretofore exercised by the judges of probate; but in all cases of the exercise of such judicial powers, they were required to report their proceedings to the next term of the Circuit Court of their respective counties, for their approval or rejection, and if approved by the Circuit Court, they were then to be considered as matters of record in the Circuit Court.

The court, and the profession generally, throughout the State, always regarded this law, on account of the mongrel character bestowed upon the probate justice, and the incongruities and anomalies of the act, as entitled to very little regard, and it was soon after repealed, being condemned by the common judgment of the country.

It is evident from this act, which was in force at the time the letters testamentary were granted in this case, that granting such letters shall be a ministerial act, and nothing more. Though the justice had important questions to consider before he could decide upon such applications, in many cases requiring a high exercise of the judgment, his decision is, nevertheless, a ministerial act, and so to be considered; and though no reference to this law is made by the court, in the opinion delivered in 16 Ill. R. 329, it might have been cited as controlling authority.

If then, granting the letters in this case was a mere ministerial act, it was, as such, open to the country, and all the facts and circumstances attending the granting thereof should have been admitted in evidence.

If it was a judicial act, the parties are concluded by the decision of the probate; if ministerial, then the evidence of Mr. Hoes and the others, except Faughander, who was interested,

31

having executed a conveyance with full covenants, should have been admitted.

The judgment of the court below is reversed, and the cause remanded, with instructions that it is competent to prove that Ayres and Waddingham refused to act as executors, by competent evidence other than record evidence, or by a citation having issued to them, or by their having renounced in writing, and that the testimony of Hoes, Lindley, Leland, Raymond and Quigley should not have been excluded.

*Judgment reversed.*