Wardwell v. McDowell et al. .

## ORRIN WARDWELL

*v.*

## JANE McDOWELL *et al.*

1.   PROBATE COURT — *not a court of record.*   The probate court, as it existed under the act of March 4, 1837, was not a court of record.

2.   PAROL EVIDENCE — *ministerial acts.*   Proceedings before the probate court under that act, in reference to the proof of the execution of a will, refusal of part of the executors named, to accept and qualify, and granting letters testamentary to one who did accept, were of a ministerial character, and as such can be proved by other than record evidence.

3.   All ministerial acts are *in pais* — open to the country — and to be established by parol proof.

4.   So, where three executors were appointed by will, giving them power to sell real estate of the testator, and only one of them qualified, who sold and conveyed the lands, the other two refusing to accept the trust and qualify, it was held such refusal might be proven by parol evidence.

5.   And it seems, in such case, it might be inferred from the *neglect* of one or more of several executors appointed in a will, to join in the execution of the trust, that they had *refused* to accept it and to qualify.

6.   EXECUTORS — *when a part refuse to qualify — power of those who do.*   At the common law, a naked power which is given to several, such as that conferred upon executors by will, to sell and convey the real estate of the testator, not coupled with any interest in the estate, can only be exercised by the joint action of the donees of the power.

7.   The power does not survive, at common law, in case of the death of one of the donees.

8.   So in the execution of a will, when one named with others as executor, refused to accept and qualify, the others could not execute the will.

9.   SAME — *powers under act Henry VIII, where a part only of several executors qualify.*   To obviate this difficulty, the act of 21 Henry VIII, ch. 4, was passed, and is in force in this State, which provides that the qualified and acting executor may execute the will when the others " do refuse to take upon him or them the administration and charge of the same testament and last will wherein they be so named as executors."

10.   And where power is given in the will to several executors to sell real estate, whether the lands are ordered to be sold peremptorily, or the executors may exercise a discretion in selling, makes no difference in the application of the act cited.   In either case the executor who qualifies may act, the others refusing to do so.

11. CHANCERY *may compel executor to exercise discretionary power.* Whatever an executor may be compelled to do by a court of chancery, he may do voluntarily.

12. So where a testator gave his executors discretionary power to sell lands, and no purpose is expressed for the application of the proceeds, if it be necessary to resort to the lands to pay debts, a court of chancery may compel such of the executors appointed, as may qualify, to exercise the power of sale, and to apply so much of the proceeds as is necessary, to payment of the debts. Then the executor may do the same voluntarily.

13. EXECUTORS — *power to sell not affected by misapplication of proceeds.* The manner of the application of the proceeds by the executor, cannot affect the power to sell; the purchaser is not bound to see to their application.

14. POWERS — *naked powers, and powers coupled with an interest or trust.* Where power is given to executors, by will, to sell real estate, without expressing any purpose in the disposition of the proceeds of the sale, the power is regarded a mere naked power, and not a power coupled with an interest or trust.

WRIT OF ERROR to the Circuit Court of La Salle county; the Hon. MADISON E. HOLLISTER, Judge, presiding.

This was an action of ejectment instituted in the court below by the defendants in error against the plaintiff in error, in September, 1857, to recover the possession of an undivided portion of certain premises in La Salle county. The facts of the case are sufficiently stated in the opinion of the court. The trial below resulted in a finding and judgment in favor of the plaintiffs, and the defendant thereupon sued out this writ of error.

The principal questions presented upon the record are,

*First,* whether the fact that one or more of several executors appointed in a will, refuse to accept the trust and qualify, can be proven by parol evidence; and *second,* whether one of several executors who qualifies, the others refusing, can execute the powers conferred by the will upon all; and herein whether a distinction would be made in such case, where the powers granted were discretionary in their character.

Messrs. GLOVER, COOK & CAMPBELL, for the plaintiff in error.

The act of 21 Henry VIII, ch. 4, is in force in this State, and provides that one of several executors who qualifies, the others refusing, may execute a power of sale conferred upon all. *Clinefelter* v. *Ayres*, 16 Ill. 332.

Whether the power conferred be a mere naked power to sell, or a power coupled with an interest, it may be executed by such as qualify, the others refusing. *Cormick* v. *Michael*, 4 Sandf. 401; *Solomon* v. *Wixom*, 27 Conn. 520.

If it be a power coupled with an interest, the survivor, or acting executor, may execute it. *Franklin* v. *Osgood*, 14 Johns. 553; 1 Caines' Cas. 15; 3 Atk. 714; 2 P. Wms. 102; 10 Peters, 565; *Pahlman* v. *Smith*, 23 Ill. 449.

The rule applies, although the power to be executed is of a discretionary character. 15 Gratt. 11; *Clay* v. *Hart*, 7 Dana, 2; *McDowell* v. *Gray*, 29 Penn. 211; *Taylor* v. *Morris*, 1 Comstock, 341; *Zebach* v. *Smith*, 3 Binney, 69.

Mr. E. S. HOLBROOK, for the defendants in error, contended that the act of 21 Henry VIII, ch. 4, had no application where the power to be exercised by the executors was of a discretionary character, but only where the act was required to be done peremptorily; and cited—

*Sinclair* v. *Jackson*, 8 Cow. R. 582; *Powell* v. *Tuttle*, 3 Coms. 339; *Pearson* v. *Jameson*, 1 McLean, 197; *Perry* v. *Lyman*, 22 Barb. S. C. R. 22; 85 Com. Law Rep. 403; 4 John Ch. R. 768; *Williams* v. *Murray's Adm'r*, Ver. 197; *Clay* v. *Craig et al.*, 7 Dana, 9; 3 J. J. Marshall, 248; *Bartlett* v. *Smith*, 24 Miss. 395; *Shelton* v. *Homer*, 5 Met. 362; 2 John. Ch. Rep. 22; Hill on Trustees, 472, 478, 501; *Wooldridge's Heirs* v. *Watkins, Ex'r*, 3 Bibb, 350; *Jamieson* v. *Smith, Ex'r*, 4 Bibb, 307; *Green* v. *Miller*, 6 John. R. 41; *Bull* v. *Bull*, 3 Day, 284; *Floyd's Heirs* v. *Johnson*, 2 Littell, 115; *Schoenberger's Ex'r* v.[a] *Lancaster Savings Institution*, 28 Penn. St. Rep. 465; *Beverly* v. *Peters*, 10 Pet. Rep. 534; *Sharpstein* v. *Tillon*, 3 Cow. 654; *Townsend* v. *Wilson*, 1 Barn. & Ald. 612; *Cole* v. *Wade*, 16 Ves. 19; *Lord* v. *Lord*, 85 C. Law R. 403; *Toler* v. *Toler*, 2 Pat. & Heath, 71; *Evans* v. *Landon*, 1 Gil. 308; *Smith et al.* v. *Hileman*, 323; 1 Bl. Com. 501; 4 Kent, 327, 333, 504.

Mr. JUSTICE BREESE delivered the opinion of the Court.

This was an action of ejectment brought in the Circuit Court of La Salle county, to recover the possession of a certain tract of land there situate. A verdict and judgment was rendered for the plaintiffs, and the case brought here by writ of error.

The following facts were agreed : Both parties claim title from Samuel Lapsley, deceased, who died in La Salle on the 21st of June, 1839, seized in fee of the premises in question. The plaintiffs are the heirs at law of Lapsley, and, as such, had Lapsley died intestate, would have been entitled to $\frac{40}{108}$ part of the premises described in the declaration. The defendant was in possession of the premises, claiming title thereto, at the time of the commencement of the suit.

Lapsley, prior to his death, and while of sound mind and memory, executed, published and declared his last will and testament, by which he directed that all his debts and funeral effects should be paid so soon after his decease as possible, out of the first moneys that should come into the hands of his executors from any portion of his estate, real or personal. He then bequeathed to certain persons named, one thousand dollars each, to be paid to them respectively, when they became of age, or married; the same to be kept out to interest at the discretion of his executors, and the interest accruing thereon, to be applied to their education and maintenance respectively, until their said respective ages or marriages, etc. He also bequeathed to Julius C. Coe, one thousand dollars, as well for the respect he bore toward him, as for his kindness and attention to the testator during his sickness. He also bequeathed to the children of his sister, one thousand dollars each, to be paid as they became of age or married, and to be put out to interest at the discretion of his executors, and the interest to be applied to their education and maintenance. Then follows this clause: " I direct my executors to sell and dispose of, as soon as may be, after my decease, all my personal property for good current money ; and that all the real

estate of which I die seized or possessed, shall be sold by my executors at any time when they may think proper, for its reasonable value, for like current money, or on such credit as they may think proper; and the amount thereof secured in such manner as is usual in like cases to insure the full and punctual payment thereof; and to effectuate this my intention, I hereby vest in my executors full power and authority to dispose of my real estate in fee simple or for a term of years, or otherwise, in as full and as large a manner in every respect, as I could myself do if living. And I do hereby make and ordain my friends, Burton Ayres, John Faughender and William Waddingham, executors of this my last will and testament."

The will was duly proved and recorded according to law on the 28th of June, 1839.

Ayres and Waddingham, two of the persons named in the will as executors, never took out letters testamentary; they were issued to John Faughender alone, who alone qualified. Ayers and Waddingham were both living at the time the letters testamentary were issued to Faughender, and at the time of the conveyance of the land to defendant's grantor, and were in no wise disqualified from acting as executors of the will.

On the second of October, 1841, after Faughender had qualified, and while he held the office of executor, he executed, acknowledged and delivered to John Swinson and Mary Swinson a deed for the premises in controversy.

The defendant showed, by regular deeds, that he was possessed of all the title the Swinsons obtained by their deed. The deed to the Swinsons is a warranty deed, and purports to have been made by Faughender, as executor of the last will and testament of Samuel Lapsley, deceased.

It was proved on the trial, that Ayres and Waddingham, with Faughender, took the will to the probate court, and it was there opened, proved and read, whereupon the justice inquired of them, if they would act as executors. Faughender agreed to act, but Ayres and Waddingham absolutely refused. Neither of them ever withdrew their refusal, and

never qualified as executors. Waddingham lived in St. Louis, and left for that place soon after the will was proved, and was never afterwards in La Salle county.

The only questions presented for our consideration, are, 1, can the refusal to act, of a person appointed executor, be proved in any other way than by matter of record? 2, had the executor, under this will, to whom was granted letters testamentary, and who qualified as such, power to convey the real estate of his testator?

The first question has been fully considered and decided by this court, in the case of *Ayres* v. *Clinefelter*, 20 Ill. 465, on a case arising under this will. All the proceedings by the probate court, in reference to the proof of the execution of this will, refusal of the executors named, to accept and qualify, and granting letters testamentary to one who did accept, were all proceedings before a court not a court of record. See act of March 4, 1837, to provide for the election of probate justices of the peace. Session Laws, 1837, page 176. These acts and proceedings are declared by this statute, to be ministerial acts, and being ministerial, can be proved by other than record evidence. In fact, there could be no record made in that court, for it was not a court of record. Its acts and proceedings, like those of an ordinary justice of the peace, were, as we said in that case, open to the country—*in pais*—and all the facts and circumstances attending the granting of the letters testamentary to one of the executors named, should have been admitted in evidence. That included, of course, the fact of the refusal, of the others named as executors, to accept and qualify, and that was the only point made and argued before us, at that time. The question was, as to the kind of evidence necessary to prove a refusal. The court, when the case was before it, at a previous term (16 Ill. 332), had decided, that the entry, by the probate justice on his docket, that Ayres and Waddingham had *failed* to qualify, did not come up to the demand of the statute, 21 Henry VIII, ch. 4, which they were then discussing, which required a *refusal* to be shown—that some unequivocal manifestation by the executors named, must be given, in order to divest themselves of

the rights, duties and powers conferred, not by the law, but by the act and will of the testator. The court cite English and American authorities, going to show, that record evidence of refusal or renunciation was alone competent to establish the fact, but do not so decide, nor did the court refer to the peculiar character of the court in which the proceedings under this will were had; that it was not a court of record, consequently, a refusal, or renunciation, could not be entered and recorded in court, in conformity with the decision in *Herron* v. *Hoffner et al.*, 3 Rawle (Penn.) 396; *Stebbins* v. *Lathrop*, 4 Pick. 43, and the case cited from 5 English Ecclesiastical R. 266, *Long et al.* v. *Symes et al.* The court say, " whatever the character of proof, it should at least be satisfactory and conclusive, and more especially, in cases of naked powers, where greater strictness is required, than when the power is coupled with an interest or trust." It will be seen, the kind of proof requisite to establish a refusal was not prescribed, but of whatever character it might be, it should be satisfactory and conclusive. A refusal to accept and qualify, must be shown; a failure so to do, however proved, does not meet the requirements of the statute of 21 Henry VIII, and that was all that was decided on that point.

In the same case, in 20 Ill. 465, the plaintiff offered to prove, in the Circuit Court, by parol, a distinct and unqualified refusal of the other executors named in the will, to accept and qualify, which proof the court rejected. It was to that point alone, as we remember, our attention was directed, and it seemed a very plain proposition, as the court before which the proceedings under the will were had, was not a court of record, and all its acts, declared by the law creating it, to be ministerial acts, that they could be proved, as any other ministerial acts, and accordingly, we held, that it was competent to prove by other than record evidence, or by a citation issued to them, or by a written renunciation, that Ayres and Waddingham had refused to accept and qualify as executors. It may be, as the counsel for the defendants in error thinks, an " unfortunate decision " — it was so, for his client; but it does not appear to us, on mature consideration, and further

reflection, that any other correct decision on that point could have been made, on the principle that all ministerial acts are *in pais*—open to the country—and to be established by parol proof.

The statute of New York provides for the *neglect* as well as the refusal of one or more of the executors to take upon them the execution of a will. In the case of *Sharp* v. *Pratt*, 15 Wend. 612, it was contended, to authorize a less number than the whole to execute a power to sell lands, there should be a renunciation from the others. The court said, the phraseology of the statute will justify a more liberal construction. It is not necessary there should be a refusal to serve; a neglect answers the same purpose, and confers the authority upon those who act. It was sufficient therefore, in this case, to show that the two executors who did not join in the deed, neglected to take upon them the execution of the will. The testimony clearly showed such neglect.

The case does not show there was any testimony other than parol, of this neglect.

In *Roseborm* v. *Mosher*, 2 Denio, 69, the court say, if Mr. Van Vechten had renounced before the surrogate, or if, being cited, he had neglected to appear and take upon himself the execution of the will, and his default had been recorded by the surrogate, there would then have been no difficulty in the case. But the court asks, is there no other way in which it may be shown that he *refused* or neglected to act as an executor? In England that seems to be an open question. I do not find that it has been decided either one way or the other. It has been held by two highly respectable courts in sister States, that the refusal need not be by deed nor by matter of record; but that it may be proved like other matters *in pais*, by any evidence which has a legal tendency to establish the fact. Presumptions may be indulged; and the declarations of the executors who did not join in the sale may be given in evidence. *Geddy* v. *Butler*, 3 Munford (Va.) 345; *Nelson* v. *Carrington*, 4 id. 332; *Den* v. *Sparks*, 1 Dev. & Battle, (N. C.) 389, are the cases referred to, and they were decided on the 21 Henry VIII, ch. 4, and it was then held, that the

mere omission of the executor, for a considerable period, to qualify and enter upon his trust, was sufficient *prima facie* evidence of the refusal.

We have looked into these cases, and find they are correctly cited. In 1 Devereux and Battle, the court say, when a man confides to another the management of his estate after his decease, the nature of the office calls for prompt action. The duties arise immediately upon the death of the testator, and a forbearance to enter upon the execution of them, when the will is proved, is presumptive evidence of a refusal to accept the charge of his testament. The forbearing to qualify is *prima facie* evidence of refusal. But if he neither qualify nor act, if he intermeddle not with the estate of the deceased, either regularly or irregularly, then the evidence of refusal is full.

*Geddy and Knox* v. *Butler and Wife,* 3 Munf. 345, was a case determined under the statute 21 Hen. VIII, ch. 4, and the court then held, that the refusal to qualify and act as executors, may be found on proof of declarations *in pais,* or presumed from circumstances, without any renunciation of record. The case in 4 Munford, refers to the case in third, and approves it. In *Chanet* v. *Villeponteaux,* 2 McCord (S. C.) 27, it was held that the removal from the State was equivalent to a renunciation of an executorship.

In the case before us, there is proof of an express refusal to qualify and act, and made before the proper court. There is no proof that either of them have ever intermeddled in the affairs of the estate, but always disclaimed the right to do so, and one of them, Waddingham, then and since a non-resident, has not been in the county of La Salle since his declared refusal to act, made before the probate justice.

We are satisfied, sufficient proof of a refusal, by Ayers and Waddingham, to qualify and act as executors, has been produced. No apprehension, such as the counsel for the defendants in error seems to entertain, that titles to land derived through an executor's sale may be jeoparded by the fleeting and evanescent character of such proof, need be entertained, for the reason, that the acts which are done as executors, manifest, at the same time, by whom they are done, leaving

it to be inferred, under the doctrine of the cases cited, that those named as executors who do not join in the acts, have refused to accept the trust and qualify. Parties interested, will always be vigilant enough to see that the deeds made, are made by competent authority.

The remaining question, as to the power of the qualified executor to sell and convey the land, has been so fully discussed by this court, in the case in 16 Ill. 329, so often referred to, that but little, if anything, more remains to be said.

At the common law, it is not doubted, that a naked power, such as this has been decided to be, not coupled with any interest in the thing or estate, could only be exercised by the joint action of the donees of the power. The power does not survive in case of the death of one of the donees. 1 Sugden on Powers, 129, *et seq*. So in the execution of a will, when one named, with others, as executor, refused to accept and qualify, the others could not execute the will. To obviate this difficulty, the act of 21 Henry VIII, ch. 4, was passed, which provides, in substance, that the qualified and acting executor may sell when the others " do refuse to take upon him or them the administration and charge of the same testament and last will, wherein they be so named as executors." See statute, 3 vol. Stat. at Large, 59. This statute is in force in this State, as this court has decided. But the counsel for defendants in error insists that this statute applies only to sales where the duty to sell is imperative, and not where it is discretionary. He insists that by the terms of this will, the executors had a discretion to sell or not, as they might deem best, and having a discretion they must exercise it jointly. That the testator must have had in view the value and importance of the joint judgment in the disposal of his estate, and he cannot be presumed to have intended a disposal of his estate by one of his appointees only. In answer to this it may be said, the testator must be presumed to have known that it was possible some one of the persons named as his executors, might refuse to accept the trust, and that the law provided, that in that event, those who did accept and

qualify, could execute the will, and it is to be presumed the testator had equal confidence in each one of the executors.

It is admitted by the defendants' counsel, if the testator had directed a positive and unconditional sale of the land by his executors, the case would have come directly within the statute, but as they are directed to sell, " at any time when they may think proper for its reasonable value," a special confidence is reposed in the individuals appointed executors, which is personal to them, and can only be exercised by them, not by a part, but by the whole of them. The statute makes no such distinction, and we have found no case that does. We find text writers and reports of cases discussing two kinds of powers as recognized at common law—a naked power, and a power coupled with an interest. The power given by this will, we have said, is of the first description, no estate or interest in the lands passing to the executors. Such a power, the courts of common law said, must be construed strictly, and must be exercised by all the executors ; that if one refused to qualify, no sale could be made. To remedy this, the statute of 21 Henry VIII, ch. 4, was enacted. It does not discriminate between lands ordered to be sold peremptorily, and those which the executors may exercise a discretion in selling. To confine it to the former, would be a narrow construction of a remedial statute, the object of which was, to prevent a failure of the power, and to remedy the oversight of a testator, in not providing for the contingency, that some of his appointees might refuse to serve. As was said by the court in 1 Dev. & Battle, *Den* v. *Sparks,* 392, the great purpose of the statute is to correct mischiefs resulting from a rigid construction of these testamentary authorities, and it is the rule of law, so to expound the act as to suppress these mischiefs and apply its remedies.

As the court said in *Taylor* v. *Morris,* 1 Comstock, 356, this statute was framed upon the presumption and belief, if that contingency of a refusal by some of the executors to act, had been foreseen, the testator would have presumed that one of his executors should execute the power alone, rather than that it should fail, and this presumption applies with as much

force to the case of a discretionary power as to one of a mandatory character. The court remark, that very many testators are not aware of the common law rule, that in the execution of a joint power it is indispensable that all should unite, and in appointing the agents to execute a power involving the exercise of discretion, it is natural to suppose, that each one would be selected with reference to his fitness for the trust. This inference is natural and fair in all cases when the testator has not thought proper to say, expressly, that a certain number must unite in the sale.

There is no object expressed in the will for the sale of the lands, nor are they charged with the payment of the legacies, yet the power to sell is fully bestowed, and could be exercised without regard to them. But the proofs in the cause now show, there were not sufficient personal assets to discharge the debts, or to pay the legacies, and they could be paid only by and through the executors. Under this state of facts, not apparent in 16 Ill., did not the executors possess a power coupled with a trust, and of which a court of chancery would compel execution? It seems clear they did, and if so, the qualified executor, under all the authorities cited, had the power to sell.

If a court of chancery would compel the executors to sell, they could sell voluntarily, for whatever act a party can be compelled to perform, he may do voluntarily. *Marcy* v. *Clabaugh,* 1 Gilm. 26.

And from the proceeds of the sale of this land, the executor may have paid some of the debts owed by the estate, which it is in proof, he did pay. But in whatever manner he may have applied the proceeds, it cannot affect the power to sell, nor was the purchaser bound to see to their application.

Again, by the first clause of the will, the lands are chargeable with the debts and funeral expenses, and though, primarily, they are payable out of the personalty, there is nothing to prohibit a testator from making them payable out of the realty in the first instance. In this view, then, the executor had a power coupled with a trust, to pay the debts and funeral expenses by a sale of the land. In every view to be taken

of this case, whether the power is a naked power only, or a power coupled with a trust, we are of opinion, two executors named in the will having refused to qualify, a sale by the executor who did qualify, is valid.

We cannot recognize any such distinction as that attempted by defendants' counsel, between a power mandatory in its character, and discretionary. The current of authorities is against such a distinction. To maintain the distinction, reference is made to *Wooldridge* v. *Watkins*, 3 Bibb, 349; *Coleman* v. *McKinney*, 3 J. J. Marshall, 246; and *Clay and Craig* v. *Hart*, 7 Dana, 1, all decided by the Court of Appeals of Kentucky. The opinion in *Taylor* v. *Morris*, 1 Comstock, 349, is an able review of these cases, and of all the authorities on this point, and the conclusion is reached, that no English adjudication or dictum could be found, limiting the operation of the statute of 21 Henry VIII, ch. 4, to cases of a peremptory order to sell. No other State seems to have recognized the distinction made by the court of Kentucky. *Zebach's Lessee* v. *Smith*, 3 Binney, 69; *Chanet* v. *Villeponteaux*, 2 McCord (S. C.) 26; *Den* v. *Sparks*, 1 Devereux and Battle (N. C.) 389, both before cited; *Brown* v. *Armistead*, 6 Rand (Va.) 593; *Miller* v. *Meetch et al.*, 8 Penn. 417; *McDowell* v. *Gray*, 29 id. 212. Numerous other cases might be cited, but it is not necessary.

In conclusion then, we are of opinion that the refusal of two of the executors named in the will to accept and qualify, was satisfactorily proved by competent evidence. That the sale by the executor who did accept and qualify, was valid, whether the power conferred by the will was a mere naked power, or a power coupled with a trust, or whether the power was of a discretionary or mandatory character.

The judgment of the Circuit Court is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Judgment reversed.*