THE PENNSYLVANIA COMPANY FOR INSURANCE ON LIVES, ETC., *et al.*

*v.*

MICHAEL BAUERLE.

*Filed at Springfield November 2, 1892.*

1. WILLS—*execution of power of sale by executors of a foreign will—statute construed.* Section 34 of the act concerning conveyances, providing for the recording of foreign wills when properly certified, and which further provides that "when, in pursuance of due power vested by will executed and proved out of this State, deeds conveying lands in this State heretofore have been or hereafter shall be executed by executors or administrators with the will annexed, duly appointed and qualified in any State of the United States, the same shall be evidence of title in the vendee or grantee to the same extent as was vested in the testator at the time of his death, whether such will has been proved in this State or not, unless, at the time of executing such deed, letters testamentary or of administration upon the estate of the deceased have been granted in this State and remain unrevoked," applies in cases where the trustees and executors are natural persons, and not where one of the executors so executing a deed under a power is a foreign corporation which has failed to take out license and qualify according to the laws of this

State.    Such foreign corporations are subject to all the restrictions and duties that are imposed upon like corporations organized under the laws of this State.

2.  SAME—*rule of construction.*  The construction that is to be placed upon any particular clause in a will depends more or less upon the plan or scope of the will as a whole.

3.  SAME—*interpretation—resort to paper not attested as a will.*  A memorandum in the handwriting of a testator, found in his papers, not signed and attested as required by the Statute of Wills, can not be received or regarded for the purpose of changing or interpreting his will.  In case of a supposed ambiguity appearing upon the face of a will, parol evidence is not admissible to supply or contradict, or enlarge or vary, the words of the will, or to explain the intentions of the testator.

4.  SAME—*whether particular lands are excepted from power of sale.*  By item 18 of a will the testator devised all the residue and remainder of his estate, both real and personal, to his trustee and executors in trust, to hold the same, and as soon as practicable convert it into money, and pay over to a hospital a given sum, and pay over the balance of his residuary estate, after deducting special bequests, to five persons designated therein.   In item 19 he gave to the trustee and executors power to sell and dispose of all or any of his real estate within the States of Pennsylvania, Ohio, Kentucky and Illinois, not specifically devised, at public or private sale, and to execute deeds therefor, and also gave them power in the meantime, and before sale, to lease such real estate, adding that it was his wish that as soon as it might be for the best interest of the estate, his trustee and executors should convert his unproductive real estate into money, excepting those parts before specially devised, and also excepting such portions as, in the opinion of his executors, would be likely to enhance in value in the near future, and also excepting an eight acre tract in Pittsburg for a hospital, and his real estate in and adjoining the city of Chicago :  *Held,* that the exceptions were not intended to take from under the power to sell all the residuary estate which his executors might think likely to enhance in value in the near future, nor the land adjoining the city of Chicago.

5.  SAME—*construed as to property to be sold.*  Where a testator, after making various specific legacies, devised all the residue of his estate to a trustee and three executors, in trust, to hold the same, and as soon as practicable convert it in into money and pay the special bequests and the balance to five devisees, and gave them power to sell and convey any and all his lands in certain States, not specifically devised, at public or private sale, for cash or on credit, including a tract in this State, and to rent the same before such sale, and directed that they should, as soon as might be for the best interest of his estate, convert his unproductive real estate into money, excepting the portions spe-

·cially devised and such parts thereof as in ·their opinion would be likely in the near future to enhance in value, and except the land in Illinois :   *Held,* that the effect of the exception was, that both the real estate in regard to which the trustee and executors might be of the opinion would enhance in value in the near future, and the Illinois tract, were to be excluded from the direction of immediate conversion, but that there was a distinction between the two kinds of property, as the sale of the first was left to the discretion of the trustee and executors to determine whether it should be sold at once, or, if not, then when it should be sold, while in respect to the Illinois land the testator had himself determined that it should not be sold immediately, and that as it was not left to the discretion of the executors to determine when and 'upon what contingency or under what circumstances it might be sold and conveyed under the power, a decree of a court of equity was necessary in order to work a valid sale and conveyance.

6.   POWER UNDER WILL—*execution by surviving executor.*   Section 97 of chapter 3 of the Revised Statutes, relating to the execution of powers ·of sale in a will, manifestly contemplates the execution of the power by a surviving executor or by surviving executors in two contingen- ·cies, only, viz., when one or more executors depart this life before sale, and when one or more executors shall fail or refuse to qualify.   Where neither of the executors dies or refuses to qualify, all must join in the execution of the power.

7.   SAME—*joint powers conferred by will—when all the donees of the power must act.*   Where a testator devises land to a trustee and executor, and to three others as co-executors, with power to sell and convert the land into money, and they all qualify by taking letters testament- ary, such power is vested in them jointly, and not severally, and can not be legally exercised or well executed except by the joint action of the four executors.

8.   The powers vested in trustees must be executed strictly, and when a trust or power is delegated to two or more jointly, for mere private purposes, the concurrence of all who are intrusted with the power is necessary to its due execution ; and this rule applies as well to trusts coupled with an interest as to cases of mere naked powers.   So when power to sell land is conferred by will upon several executors, all who qualify and are living must join in the execution.

9.   One of several executors to a will can not exercise a power of sale under it, unless it is shown that the others refused to act; and such re- fusal must be shown positively and affirmatively, and some unequivocal manifestation by the executors named must be given, in order to divest themselves of the rights, duties and powers conferred, not by the law, ·but by the act and will of the testator.

10. Where the power to sell and dispose of real estate, and to execute deeds of conveyance therefor, and to convert the same into money, has been delegated by will to four executors, jointly, one of whom is a foreign corporation, and they all accept the trust and qualify as executors, a deed made by the three, only, of the executors who are natural persons, the other not being authorized to act, under our laws, by reason of its having failed to comply with such laws, will not be a good execution of the power, and no title will pass by it, it appearing that the other trustee, the corporation, still exists, and has not resigned or been removed from office.

11. SAME—*title, how obtained under such power.* In such case, in order to convey a good title to land in this State, the trustee and executor which is a foreign corporation must either procure from the Auditor of Public Accounts a certificate of authority stating that it has complied with the requirements of the statute of this State, and then join with its co-executors in the execution of a deed of conveyance, or else in some proper way shake off the trust, and absolutely divest itself of the title, discretion and power that the will gives it in respect to the land in this State, thus leaving the co-executors in a position, as surviving executors, where they can lawfully act in the premises.

12. CORPORATION—*foreign corporation placed on same footing as domestic.* Where the general laws of this State provide for the organization of corporations, foreign corporations of like character doing business in this State shall exercise no greater or different powers, and shall be subject to the same restrictions, liabilities and duties.

13. SAME—*what is the doing of business in this State.* A foreign corporation, by receiving land in this State by devise, with power to sell and dispose of the same, and with power to lease it and to collect the rents and profits therefrom, and the assertion in this State of ownership of such land, and assuming to sell and convey it, and bringing suit in the courts of this State in respect to such land and such alleged ownership, and for the enforcement of contracts in regard to the same, must be held to be doing business in this State, within the meaning of section 26 of the act concerning corporations.

14. PARTIES—*to bill requiring construction of will.* The heirs of the testator are not necessary parties to a bill filed for the construction of a will as to the residuary estate, when, after special bequests, all the residue of the estate is given to certain devisees, but the latter are necessary parties.

APPEAL from the Circuit Court of Cook county; the Hon. L. C. COLLINS, Judge, presiding.

Messrs. SAWIN & VANDERPLOEG, and Mr. HENRY V. FREEMAN, for the appellants.

Messrs. KRAFT & KRAFT, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This is a bill in equity for the specific performance of a contract for the sale of land, exhibited in the circuit court of Cook county by the Pennsylvania Company for Insurance on Lives and Granting Annuities, a corporation organized and doing business in the State of Pennsylvania, trustee and executor under the last will and testament of John H. Shoenberger, deceased, and by Andrew Long, John M. Brownson and Anthony J. Antello, co-executors under said last will and testament, complainants in that court and appellants in this, against Michael Bauerle, defendant in that court and appellee in this.   In the court below a demurrer was sustained to the bill of complaint, and it was dismissed out of court for want equity, but without prejudice.

The eighty acres of land which is the subject matter of the contract the specific performance of which is herein sought, is in Cook county and adjoins the city of Chicago, and is the south one-half of the south-east quarter of section 17, township 39 north, range 13, east of the third principal meridian. It was the only real estate, and the only property of any kind, that said John H. Shoenberger, at the time, of his death, owned in the State of Illinois.   Said Shoenberger died in the city of New York on the 12th day of November, 1889, and left a last will and testament, which was duly probated in the Surrogate Court in and for the city, county and State of New York, and in said court, in conformity with the provisions of the will, Alice E. Shoenberger, widow of the deceased, and one Alexander T. Mason, were appointed executrix and executor of all the testator's property within the State of New York. An exemplified copy of the proceedings had in said Surrogate

Court was then filed and recorded in the Register's Office and Orphans' Court in and for the city and county of Philadelphia and State of Pennsylvania, and on January 30, 1890, said Orphans' Court granted letters testamentary, in conformity with the provisions of the will, to the four complainants and appellants herein, of all that portion of the real estate, personal effects and property of the deceased situate in the States of Pennsylvania, Ohio, Kentucky and Illinois. A full and complete exemplification of the will and of the proceedings in said Surrogate Court and in said Orphans' Court was filed and recorded in the recorder's office of Cook county, Illinois, on February 25, 1890.

On the 14th day of August, 1890, appellants, by an instrument in writing of that date, sold to appellee the eighty acres of land in question for $240,000, to be paid as follows: $5000 cash, the receipt of which was acknowledged; $55,000 upon receipt of warranty deed and abstract showing good title; $60,000 on or before one year; $60,000 on or before two years and $60,000 on or before three years, with six per cent interest, etc.; and by said writing appellants covenanted and agreed to convey and assure said land to appellee in fee simple, clear of all incumbrances whatever, by a good and sufficient warranty deed, and it was mutually agreed that all the covenants and agreements in the writing contained should be fulfilled within thirty days after abstract had been furnished showing good title. The averments of the bill show that within the time contemplated by the agreement an abstract of title was made and delivered to appellee, which shows a good, merchantable fee simple title to said land, free of all incumbrances, vested in appellants, as trustee and executors of the estate of John H. Shoenberger, deceased.

In order properly to consider the objections that are urged by appellee, upon his demurrer, to the sufficiency of the bill of complaint herein, it is necessary to state certain matters which appear upon the face of the bill, and of the true copy

of the will of the deceased, which is expressly made a part of said bill.

The twenty-first item of said will is as follows: "I do hereby constitute and appoint the Pennsylvania Company for the Insurance on Lives and the Granting Annuities, of the city of Philadelphia, Pennsylvania, my trustee and executor, and my friends Andrew Long, Esq., now cashier of the Exchange National Bank of Pittsburgh, Pennsylvania, J. M. Brownson, Esq., now in the employment of Messrs. Shoenberger, Spier & Co. of Pittsburgh, Pennsylvania, and Anthony J. Antello, Esq., of Philadelphia, Pennsylvania, as co-executors of this my last will and testament, for all that portion of my estate, real and personal, and effects and interests, in the States of Pennsylvania, Ohio, Kentucky and Illinois, and of any property that may be transferred to them upon the close of the administration of my estate in the State of New York by my executors hereinbefore appointed by me for that State."

In the thirteenth item of the will the testator gave, devised and bequeathed to his trustee and executors thereinafter named in the will, in trust, a certain piece or parcel of land in the city of Pittsburg, by metes and bounds, it being the easterly and upper end of an eight acre lot purchased from the Allegheny Cemetery Corporation, "to hold and convey the same, as hereinafter directed, for the erection and maintenance thereon of the necessary buildings for a Protestant Episcopal church hospital, as a memorial to my deceased wife, which hospital shall ever be called and known as 'St. Margaret Memorial Hospital.'"

The eighteenth item of the will is as follows: "All the rest, residue and remainder of my estate, both real and personal, I give and bequeath to my trustee and executors hereinafter named, and to their successors, in trust, to hold the same, and as soon as practicable to convert the same into money, and to pay over to the corporation of the 'St. Margaret Memorial Hospital,' hereinbefore provided to be incorporated, the sum

of $250,000, to be added to the permanent fund of said corporation for the maintenance of said hospital as a free institution, and to pay over the balance of my residuary estate, after the payment of all bequests and devises hereinbefore made in this, my will, in equal shares, to the following named persons, their heirs, legal representatives or assigns, viz.: My wife, Alice E. Shoenberger, my brother George's wife, Ella B. Shoenberger, my sisters Anna Maria Watts and Mrs. Elizabeth S. Lytle, and my brother Edwin F. Shoenberger. If any of the provisions, devises or bequests in this my will should fail by reason of any cause, then the property or effects embraced in such devise or bequest shall thereupon pass into and form a part of my residuary estate."

The nineteenth item of the will is as follows: "I hereby authorize, order and direct my trustee and executors hereinafter named and appointed, in relation to my property, real and personal, in the States of Pennsylvania, Ohio, Kentucky and Illinois, for the purposes of this my will, or otherwise, to sell and dispose of all or any part or parcel of my real estate within the limits of said States of Pennsylvania, Ohio, Kentucky and Illinois, and not hereinbefore specifically devised, at public auction or private sale, on such terms as to cash or credit, or part cash and part credit, as to them shall seem most advantageous to my estate, and to execute deeds of conveyance therefor, and in the meantime to lease the same and to collect the rents and profits therefrom. It is my wish, and I so direct, that as soon as may be for the best interest of my estate, my trustee and executors hereinafter named, their successor or successors, shall convert into money and productive securities all my unproductive real estate, excepting that portion hereinbefore specifically devised, and also excepting such portion of my real estate as in the opinion of my said trustee and executors would be likely in the near future to enhance in value, and excepting especially my eight acre lot in the city of Pittsburg, on part of which the said 'St. Margaret Memo-

rial Hospital' is to be erected, and my real estate situate in and adjoining the city of Chicago, Cook county, Illinois."

The last clause of item twenty-second of the will is as follows: "And I hereby vest all the rights and title, power, authority, control or direction and discretion conferred upon any of the executors and trustees appointed in this my will, in the survivors and survivor of them, and in any administrators or administrator with the will annexed to whom letters may be granted, or to any trustee or trustees who may be appointed by the competent court on the death of my said executors and trustees herein named, and the survivors and survivor of them, or on any other contingency by which my said executors, and the survivors and survivor of them, shall become incapable of acting or cease to act."

It is stated in the bill that the Pennsylvania Company for Insurance on Lives and Granting Annuities is a trust corporation organized under the laws of the State of Pennsylvania; that by an act of the legislature of that State it is authorized to accept and receive moneys or other property, real and personal, in trust, etc., and to accept and execute trusts, of any and every description, committed or transferred, with their consent, to them by any person or persons whatsoever, and that by a further act of said legislature it is authorized to accept and execute the office and appointment of executors and administrators; but it is submitted by the bill that said company is not a foreign trust corporation doing business in the State of Illinois, as contemplated by or within the meaning of the statute and laws of said State of Illinois governing foreign trust corporations doing business in said State, by reason that it has, with its co-executors, accepted the trust aforesaid in it and its co-executors reposed under the will of said John H. Shoenberger, and it is also submitted that it, as trustee and in connection with its co-executors, can lawfully convey, by good and sufficient deed of conveyance, the eighty acres of land in question to the said Michael Bauerle. And

it is further averred in the bill, that the said Pennsylvania company never has done business as a trust corporation in the State of Illinois, and does not intend so to do; that the fee in said south half of said south-east quarter so in it, as trustee and as executor, with the co-executors, vested, is the only and sole interest it has in any real estate or other property in Illinois, and it is submitted by the bill that a conveyance by it as trustee, in connection with its co-executors, of said land, does not bring it within the meaning of, or within the requirements of filing its bond under, the statute of the State of Illinois appertaining to foreign trust companies doing business in said State.

It is alleged in the bill, in substance, that appellants, within the time conditioned in the agreement, made, executed and offered to appellee a deed of conveyance of the eighty acres of land, which deed was duly sealed, signed and acknowledged by appellants in their several and respective capacities as trustee and executors of the estate of said John H. Shoenberger, deceased, and that while said deed was not, in its strict, technical form, a warranty deed, yet that appellee, knowing the condition of the fee of the land, waived such technicality and consented to receive said deed, if the same could and did pass the legal title.

The Pennsylvania company having accepted the trust created by the will, and the office of executor, in connection with its three co-executors, what is its status in respect to the conveyance of land of the deceased situate in the State of Illinois?

It is provided in section 34 of the act concerning conveyances, (1 Starr & Curtis, chap. 30, par. 34, sec. 33,) that all original wills duly proved, or copies thereof duly certified, according to law, and exemplifications of the record of foreign wills made in pursuance of the law of Congress in relation to records in foreign States, may be recorded in the same office where deeds and other instruments concerning real estate may be required to be recorded, etc.; and the next following para-

graph and section reads as follows : "Where, in pursuance of due power vested by will executed and proved out of this State, deeds conveying lands in this State heretofore have been or hereafter shall be executed by executors or administrators with the will annexed, duly appointed and qualified in any State of the United States, the same shall be evidence of title in the vendee or grantee, to the same extent as was vested in the testator at the time of his death, whether such will has been proved in this State or not, unless, at the time of executing such deed, letters testamentary or of administration upon the estate of the deceased shall have been granted in this State and remain unrevoked."

It is urged by appellants that under and by virtue of the paragraph and section of the statute just quoted, the Pennsylvania company, trustee and executor, and its co-executors, have full power and authority to join in the execution of a deed which is and will be effective to convey the title to the land in Illinois. This, no doubt would be so if the trustees and executors were all natural persons. But here the Pennsylvania company, trustee and executor, is a corporation organized under the laws of the State of Pennsylvania and doing business in that State, and such being the case, we understand that by reason of various statutes in force in this State, and of the interpretations that have been placed upon them by the courts, an additional burden is imposed upon said company before it can do business in this State or execute a conveyance to lands located therein which will effectively operate as a transfer of the title which was vested in its testator.

Section 26 of the act concerning corporations (1 Starr & Curtis, chap. 32, par. 32,) contains this provision : "Foreign corporations, and the officers and agents thereof, doing business in this State, shall be subjected to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers ; and no

foreign or domestic corporation established or maintained in any way for the pecuniary profit of its stockholders or members shall purchase or hold real estate in this State, except as provided for in this act." And in an act to provide for and regulate the administration of trusts by trust companies, in force July 1, 1887, and amended by act in force July 1, 1889, (Laws 1887, p. 144, and Laws 1889, p. 99,) it is provided by section 1 that any corporation incorporated under the general incorporation laws of this State for the purpose of accepting and executing trusts, and authorized by law to accept or execute trusts, may be appointed assignee or trustee by deed, and executor, guardian or trustee by will, and that such appointment shall be of like force as in case of appointment of a natural person. Section 2 makes it lawful for any court in this State to appoint any such corporation as trustee, receiver, assignee, guardian, conservator, executor or administrator. Section 3 relieves such corporations from the burden of giving bond or security in case of any appointment thereinbefore provided for. Section 6 requires that such company, before accepting any such appointment, shall deposit with the Auditor of Public Accounts the sum of $200,000 in specified stocks, municipal bonds or mortgages. And section 8 provides : "It shall not be lawful for any such company to accept any trust or deposit, as hereinbefore provided, after the passage of this act, without first procuring from the Auditor of Public Accounts a certificate of authority stating that such company has complied with the requirements of this act in respect to such deposit."

In *Stevens* v. *Pratt*, 101 Ill. 206, this court, in discussing the provisions of the above quoted section 26 of the act concerning corporations, said : "Foreign corporations, and the officers and agents thereof, doing business in this State, are placed on an equality, to the extent that they shall exercise no greater or different powers, and shall be subject to the same regulations and restrictions, and governed by the same rules

of law in these respects, with corporations of like character organized or to be organized under the general laws of this State. The meaning will, obviously, not be changed, but may be put in a stronger light, by a little transposition of language, thus: 'Where the general laws of this State provide for the organization of corporations, foreign corporations of like character doing business in this State shall exercise no greater or different powers, and shall be subject to the same liabilities, restrictions and duties.' The manifest and only purpose was to produce uniformity in the powers, liabilities, duties and restrictions of foreign and domestic corporations of like character, and bring them all under the influence of the same law." In *Barnes* v. *Suddard*, 117 Ill. 237, it was also held that the purpose of said section 26 was to produce uniformity in the powers, liabilities, duties and restrictions of foreign and domestic corporations of like character, and bring them all under the influence of the same law. And in *Female Academy* v. *Sullivan*, 116 Ill. 375, this court, referring to said section 26, says: "As the section reads, foreign corporations 'doing business in this State,' it is said this corporation is not embraced therein, as it is not doing business in this State. Receiving lands in this State by devise, and the assertion in the State of ownership over them, we regard as a sufficient doing of business in this State to bring appellant within the purview of this language of the section." So here, receiving the land adjoining Chicago by devise, with power to sell and dispose of the same, and with power to lease it and to collect the rents and profits therefrom, and the assertion in this State of the ownership of said land, and assuming to sell and convey it, and bringing suits in the courts of this State in respect to said land and such alleged ownership, and for the enforcement of contracts in regard to the same, must be held to be doing business in this State, within the purview of said section.

The deed that was tendered to appellee, as appears from the averments of the bill, was signed by all the appellants, includ-

ing the Pennsylvania company. It is therefore contended by appellants, that even though it be conceded that said company had no right or power, under the laws of this State, to take the land in this State under the will, or convey the same, without first depositing $200,000 in stocks, bonds or mortgages with the Auditor, and procuring from him a certificate of authority, yet that its signature to the deed so tendered can do no harm, and was, at most, merely superfluous, and that the deed itself, either with or without such signature, it being executed by the other executors, would operate as a valid conveyance of the title to appellee. This contention seems to be based upon two foundations,—the provisions of section 97 of chapter 3 of the statutes of this State, (1 Starr & Curtis, p. 231,) and the last clause of item 22 of the will of the deceased. Said section of the statute reads thus : "In all cases where power is given in any will to sell or dispose of any real estate or interest therein, and the same is sold and disposed of in the manner and by the persons appointed in such will, the sale shall be good and valid ; and where one or more executors shall fail or refuse to qualify, or depart this life before such sales are made, the survivor or survivors shall have the same power, and their sales shall be as good and valid, as if they all joined in such sales."

The statute manifestly contemplates the execution of the power of sale by a surviving executor or by surviving executors in two contingencies, and in two contingencies only. One is, where one or more executors depart this life before sale, and it is needless to say that that contingency has not here arisen. The other is, where one or more executors shall fail or refuse to qualify. But the Pennsylvania company did not fail or refuse to qualify as executor. On the contrary, it accepted the trust, and letters testamentary were granted to it. It is expressly averred in the bill "that your orator, the said Pennsylvania company, as trustee, aforesaid, and the said Pennsylvania company and the others of your orators as executors aforesaid, have accepted said trust and are acting in their

several capacities aforesaid, and that the duties, rights and powers, as such, in them, respectively, vesting, are still in full force and in nowise vacated or discharged." Said company is here now in court, in its character of trustee and executor, and insisting that as such trustee and executor, and in respect to the land of the deceased located in this State, it is entitled to the relief prayed for in the bill.

The devise is to the Pennsylvania company as trustee and executor, and to the other appellants as executors, and all four of the executors and appellants are the donees of the power of sale contained in the will that is here involved. The discretion and power vested by the will is in the Pennsylvania company and the other three executors, jointly, and not severally. An analysis of the clause of item 22 that is relied on by appellants shows that its only effects are to vest all the title, power, etc., conferred upon the executors, first, in the survivors or survivor of them; second, in any administrators or administrator with the will annexed to whom letters may be granted; third, in any trustee or trustees who may be appointed by the competent court on the death of the named executors, and the survivors and survivor of them; and fourth, in any trustee or trustees who may be appointed by the competent court on any other contingency by which said executors, and the survivors and survivor of them, shall become incapable of acting or cease to act. But here, in the *status* of the trust as disclosed by the bill, the survivors or survivor of the executors have not become incapable of acting and have not ceased to act, and we do not see why any stress should here be placed upon the words, "or on any other contingency by which my said executors, and the survivors and survivor of them, shall become incapable of acting or cease to act."

The devise, here, in item 18, of the residue of the estate, was to the "trustee and executors," with power to convert the same into money, and the power to sell, donated in the first clause of item 19, is to the trustee and executors, and the

direction in the second clause of said item to convert into money and productive securities is to the trustee and executors, and in item 21 the Pennsylvania company is designated and named as trustee and executor, and the other three appellants are designated and named as co-executors.    The devise and powers, then, were primarily to the Pennsylvania company and the other executors jointly, and afterwards, by express provision in item 22, to the survivors and survivor of them.    Since all four of the executors accepted the trust and received letters testamentary, and since the discretion that was given and the the powers that were donated by the will were and are vested in them jointly, and not severally, it follows that such discretion can not be legally exercised or such powers well executed except by the joint act of all four of the executors.

The powers vested in trustees must be executed strictly, and where a trust or power is delegated to two or more, jointly, for mere private purposes, the concurrence of all who are intrusted with the power is necessary to its due execution,—and this rule applies as well to trusts coupled with an interest, as to cases of mere naked powers.    *Green* v. *Miller*, 6 Johns. 39; *Franklin* v. *Osgood*, 14 id. 527; *Sinclair* v. *Jackson*, 8 Cow. 543; *Peter* v. *Beverly*, 10 Pet. 532; *Lancashire* v. *Lancashire*, 2 Phillips, 265; *Leggett* v. *Hunter*, 19 N. Y. 445; 2 Perry on Trusts, (3d ed.) sec. 493.    Where a power to sell land is conferred by the will upon several executors, all who qualify and are living must join in the execution.    (18 Am. and Eng. Ency. of Law, 958, and authorities cited in notes.)    One of several executors to a will can not exercise a power of sale under it unless it is shown that the others refused to act, and such refusal must be shown positively and affirmatively, and some unequivocal manifestation by the executors named must be given, in order to divest themselves of the rights, duties and powers conferred, not by the law, but by the act and will of the testator.    *Clinefelter* v. *Ayers*, 16 Ill. 329; *Wardwell* v.

*McDowell,* 31 id. 364.     See, also, *Pahlman* v. *Smith,* 23 Ill. 448, and *Ely* v. *Dix,* 118 id. 477.

The powers to sell and dispose of real estate, and to execute deeds of conveyance therefor, and to convert the same into money, having been delegated by the will to the four appellants ·jointly, as executors, and they all having accepted the trust and qualified as executors, we think that a deed made by three, only, of the executors is not a good execution of the powers in the will, it appearing that the Pennsylvania company, the other trustee and executor, still survives as a going corporation, and that it has not resigned and been discharged from its office of trustee and executor, or been removed from its trust position by the order or decree of any competent court.     Waiving the matters hereinafter considered it would seem that in order to convey to appellee a good and valid title to the land here in question, the Pennsylvania company must either procure from the Auditor of Public Accounts a certificate of authority stating that it has complied with the requirements of the statute of this State, and then join with its co-executors in the execution of a deed of conveyance, or else in some proper way shake off the trust and absolutely divest itself of the title, discretion and power that the will gives it in respect to the land situate in this State, thus leaving the co-executors in a position, as surviving executors, where they can lawfully act in the premises.

One of the contentions of appellee is, that the second clause of item 19 of the will absolutely excepts the real estate in and adjoining the city of Chicago from the powers of sale and conveyance given in item 18 and in the first clause of item 19. We do not so understand the will.     The important matter is to discover the real intention of the testator.     The construction that is to be placed upon any particular clause in a will depends more or less upon the plan or scope of the will as a whole.     By item 18 the testator devises all the rest, residue and remainder of his estate, both real and personal, to his

trustee and executors, in trust, to hold the same, and as soon as practicable convert it into money, and pay over to the St. Margaret Memorial Hospital the sum of $250,000, and pay over the balance of his residuary estate, after deducting special bequests and devises, to the five persons designated therein. In the first clause of item 19 he gives to his trustee and executors power to sell and dispose of all or any part of his real estate within the States of Pennsylvania, Ohio, Kentucky and Illinois that is not specifically devised, at public auction or private sale, on such terms as to cash or credit, or part cash and part credit, as to them shall seem most advantageous to his estate, and to execute deeds of conveyance therefor.    He also, in said clause, gives them power in the meantime, and before sale, to lease said real estate and collect the rents and profits therefrom.    He then adds, and in immediate connection with this latter provision, the second clause of said item, as follows: "It is my wish, and I so direct, that *as soon as may be* for the best interest of my estate, my trustee and executors hereinafter named  *  *  *  shall convert into money and productive securities all my unproductive real estate, excepting that portion hereinbefore specifically devised, and also excepting such portion of my real estate as in the opinion of my said trustee and executors would be likely in the near future to enhance in value, and excepting especially my eight acre lot in the city of Pittsburg, on part of which the said St. Margaret Memorial Hospital is to be erected, and my real estate in and adjoining the city of Chicago, Cook county, Illinois."

The real estate specifically devised by the will, and the part of the eight acre lot on which the Hospital was to be located, formed no part of the residuary estate devised to the trustee and executors in item 18, and no part of the property that was under the powers donated in that item or in the first clause of item 19, and so the specification of them as exceptions in the second clause of said item 19 was mere matter of surplus-

age, and does not affect the interpretation to be placed upon the will.  One of the exceptions noted in said clause is, "such portion of my real estate as in the opinion of my said trustee and executors will be likely in the near future to enhance in value."  It is manifest from an examination of the will that it was not the intention, by this exception, to take from under the power to sell and convey all the residuary estate that portion of it which the trustee and executors thought would likely enhance in value in the near future.  The reasonable interpretation to put upon it is this :   The testator contemplated that all the real estate under the power would not be sold immediately, and he left that matter largely to the discretion of the trustee and executors.  He accordingly gave them power to lease real estate and collect the rents and profits therefrom, and then adds, and in the same item, his wish and direction that *as soon as may be* for the best interest of his estate said trustee and executors shall convert into money all his unproductive real estate, and then says, excepting such real estate as in their opinion will likely in the near future enhance in value.  Very plainly, the exception has no application to the general power to sell and convey, and does not exclude from the domain of that power the real estate mentioned in said exception.   The effect is simply to exclude the property so mentioned from the expressed wish and direction that the unproductive real estate,—that which was not bringing "rents and profits,"—should be made productive as speedily as possible by converting it into money and productive securities.

We think that the other exception, the "real estate in and adjoining the city of Chicago," falls in the same category, and that said real estate is also excepted from the wish and direction to convert, as speedily as may be, unproductive realty into money and productive securities, but is not excepted from the power to sell and convey.   The context of the will seems to require such construction.   And there seems to be no good

ground for holding that the one exception excludes property from the power while the other exception merely excludes property from the direction for immediate conversion. Moreover, the devise to the residuary legatees is not of real estate, but of the money or fund into which the real estate not specifically devised is to be converted. The legal title to the land in Illinois was devised to the trustee and executors, in trust, and the beneficial interest in it as land not having been devised to any one, the only reasonable conclusion is that it was intended that it should be converted into money, and form a part of the residuary fund which is to be distributed among the residuary legatees. It is not to be presumed that it was the intention of the testator that the clearly expressed power to sell, dispose of and execute deeds of conveyance for all of his real estate within the limits of the State of Illinois should remain forever unexecuted, and that the title to the Chicago property should always remain in his trustee and executors, a perpetual trust, with the time for the distribution of it or its proceeds to the beneficiaries in the trust never reached.

It is averred in the bill that among the papers of the testator, and with the will, was found a paper in the handwriting of the testator, containing a direction or request to his trustee and executors not to sell the property in question until $125,-000 could be realized therefrom, and it is claimed that this memorandum shows that it was the intention to except said property merely from the direction to immediately turn unproductive real estate into money or productive securities. Said writing not being signed and attested as required by the Statute of Wills can not be received or regarded for the purpose of changing or interpreting the will. The rule is, that in case of a supposed ambiguity appearing upon the face of the will, parol evidence is not admissible to supply or contradict, or enlarge or vary, the words of the will or to explain the intention of the testator. In the view we have taken of the will itself, however, the written memorandum in question is a matter which is

here unimportant, for we have found that it is deducible from the terms and provisions of the will that the real estate adjoining the city of Chicago is not excepted and excluded from the powers of sale and conveyance, but merely from the direction for a speedy conversion into productive property.

Both the real estate in regard to which the trustee and executors are of opinion that it would be likely in the near future to enhance in value, and the real estate adjoining Chicago, are excluded from the direction for an immediate conversion. But there is this distinction between the cases of the two kinds of property: in respect to the first it is left to the discretion of the trustee and executors to determine whether or not it shall be sold at once, or, if not, then when it shall be sold; while in respect to the Chicago property the testator has determined for himself that it shall not be sold immediately and converted into other property, and we are wholly unable to find anywhere in the will that it is left to the discretion of said trustee and executors to determine when, or upon what contingency, or under what circumstances it can be sold and conveyed under the powers to which it is subject. It would seem, therefore, in order to work a valid sale and conveyance of said Chicago property, that the decree of a court of chancery is necessary in the premises.

It is suggested that the heirs-at-law of John H. Shoenberger, deceased, and also the residuary legatees, are necessary parties to this bill, or to any bill that may be filed, since the construction of the will of said deceased is involved, and they are all parties actually interested. We are unable to see what interest the heirs can have in the matter. Large portions of the estate are specifically devised. The rest, residue and remainder of the estate, both real and personal, is then devised to appellants, in trust, and after the payment of the $250,000 to the hospital, and other bequests and devises, the balance of the residuary estate is to be paid over, in equal shares, to the five residuary legatees named in the will. No part or parcel of the

residuary estate, or of its proceeds, can, under any interpretation that can be placed upon the provisions of the will, be regarded as intestate property. It would seem, however, that said residuary legatees should be parties to the bill, for the tract of land situate in or adjoining the city of Chicago is a part of the residuary estate, the proceeds of which, after certain specified payments therefrom, they are entitled to receive from the trustee and executors, in equal shares; and it not being left by the will to the discretion of the trustee and executors to fix the time when or circumstances under which the temporary bar interposed by the testator to the sale and conversion into money of the Chicago property under the powers donated shall be removed, they have a right to their day in the chancery court upon that matter.

For the reasons indicated herein we think it was not error in the circuit court to sustain the demurrer and dismiss the bill of complaint of appellants without prejudice.

The decree is affirmed.

*Decree affirmed.*