FARMERS' LOAN & TRUST CO. v. CHICAGO & N. P. R. CO. et al.

(Circuit Court, N. D. Illinois. April 3, 1895.)

1. CORPORATIONS—TRUSTS—MORTGAGE.

Act Ill. June 15, 1887, as amended by Act June 1, 1889, provides that every corporation organized for the purpose of accepting and executing trusts shall deposit with the auditor of public accounts, for the benefit of its creditors, the sum of $200,000, and declares that it shall not be lawful for any such company to accept any trust without first procuring a certificate from the auditor stating that it has made such deposit. *Held*, that a mortgage to secure a debt was not within the prohibition of the act.

2. MORTGAGES—VALIDITY—CORPORATIONS.

Where a mortgage to a corporation that has not complied with said act provides for the execution of certain trusts which are within the prohibition of the act, such trusts are void, but the mortgage is not invalidated.

3. SAME—LIABILITY OF MORTGAGOR—ESTOPPEL—TRANSFER OF PROPERTY.

Both the mortgagor in such a mortgage and a purchaser who has assumed the mortgage debt are estopped from asserting that the corporation has no power to act as mortgagee.

4. SAME—FORECLOSURE—INTERVENTION—RIGHTS OF STATE.

Where the mortgagee in such mortgage brings suit in a federal court to foreclose such mortgage for the benefit of the innocent holders of the mortgage bonds, the state has no right to intervene in order to have the mortgage declared invalid because in violation of the state law, since the state has no property interest in the litigation.

5. SAME—RIGHTS OF JUDGMENT CREDITOR.

A judgment creditor of a corporation has no right to intervene in a suit to foreclose a mortgage given by the corporation in order to assert the invalidity of the mortgage, on the grounds that there was no resolution of the stockholders authorizing the mortgage and that the mortgage was not recorded, where such creditor did not obtain judgment till after the foreclosure suit was begun.

In Equity.

Bill by the Farmers' Loan & Trust Company against the Chicago & Northern Pacific Railroad Company, the Northern Pacific Railroad Company, and others to foreclose a mortgage. Louis Daenell and the state of Illinois prayed leave to file petitions in intervention.

Mr. Turner, Mr. Herrick, and Mr. Burry, for complainant.
Mr. Spooner, Mr. Connell, and Mr. Miller, for defendant companies.
Mr. Varnum, for petitioner Louis Daenell.
Mr. Maloney, Atty. Gen., for the state of Illinois.

JENKINS, Circuit Judge.   The Farmers' Loan & Trust Company, a corporation created by and under the laws of the state of New York, and authorized by the laws of that state to accept the trust hereinafter stated, filed its bill to foreclose a mortgage executed by the Chicago & Northern Pacific Railroad Company to the Farmers' Loan & Trust Company, as trustee.   This mortgage is dated the 1st day of April, 1890, and covers all the lines of railway and property owned by the mortgagor company in the state of Illinois, and was given to secure an issue of bonds by said company, aggregating thirty millions of dollars.   The mortgage provided, by article 9, that the trustee should have the right to enter and operate the road in case of default; by article 10, that the trustee might enter and sell in case of default.   This latter provision is, however, understood to be void under the laws of the state of Illinois.   By article 11 the trustee, upon default, and upon requisition and indemnity by the bondholders, should proceed to execute the trusts set forth in the instrument; by article 13 the trustee, at any sale of the mortgaged property, upon request of the holders of three-fourths in amount of the outstanding bonds, may bid for and purchase the property in behalf of the bondholders.   These are all the special provisions in the mortgage to which reference is deemed necessary. The mortgagor company, simultaneously with the execution of the mortgage, leased its railway property, corporate rights, and franchises to the Wisconsin Central Company and the Wisconsin Central Railroad Company for a period of 99 years, at a stipulated rental of $350,000 a year, the lessees covenanting to pay such further sum or sums of money as might be necessary to pay the interest upon the mortgage bonds issued under the mortgage referred to.   On the same day, the Wisconsin companies executed to the Northern Pacific Railroad Company a lease of all the properties described in their lease from the mortgagor company, and the Northern Pacific Company covenanted to keep and perform all the conditions and obligations of the lease executed by the Wisconsin companies, and, among other things, to pay such sums as might be necessary to pay interest on the mortgage bonds of the mortgagor company.

The Chicago & Northern Pacific Company and the Northern Pacific Company now file pleas to the effect that the complainant trustee has never deposited with the auditor of public accounts of the state of Illinois, for the benefit of its creditors, the sum of $200,000 in securities, as provided by law, and has never procured from the auditor of public accounts a certificate of authority stating that the complainant has complied with the requirements of the law of the state of Illinois of 1887, entitled "An act to provide for and regulate the administration of trusts by trust companies and the act amendatory thereof," and assert that the complainant is not now and has never been authorized or empowered to hold in trust the property alleged to have been conveyed in the alleged trust deed or mortgage of April 1, 1890, or to accept, enforce, or execute the trust or trusts therein reposed, or to bring any suit or action for the enforcement thereof, or for the foreclosure of the mortgaged property; that

neither the defendant companies nor any of their officers knew, at the time of the execution of the trust, or at any time thereafter prior to this suit, that the complainant had failed to comply with the statutes of the state of Illinois above referred to, but believed it had so done. They claim that by reason of the facts alleged the mortgage or trust deed in question is absolutely void. Louis Daenell, a judgment creditor of the mortgagor company, by judgment recovered on the 17th day of February, 1894, and since the institution of the suit, asks leave to intervene, and prays that the trust deed or mortgage may be declared null and void, and to constitute no lien upon the property of the mortgagor company, and that he may be permitted to sell the property now in the hands of the receivers of this court, under execution issued out of a state court of Illinois, under his judgment therein obtained. This petition proceeds upon the same ground as stated in the pleas of the two railroad companies defendant, and upon the further ground that the mortgagor company, prior to the making of the trust deed, did not cause and procure an order or resolution authorizing the mortgage to be passed by the concurrence of the holders of two-thirds of the amount of stock of the mortgagor company at a meeting of the stockholders called by the directors of the corporation for such purpose after notice given as provided by law, and cause such order or resolution for such trust deed to be recorded in the office of the secretary of state of the state of Illinois, or in the office of the recorder of deeds of Cook county, Ill., in which county the mortgagor company was located. Subsequent to the hearing the attorney general of the state of Illinois had leave amicus curiae to submit a brief against the validity of the mortgage and the power of the complainant to accept the trusts therein. Upon such submission, he presents with the brief his petition in behalf of the people of the state of Illinois, asking leave to intervene and to file an intervening bill making the people of the state of Illinois a party to the cause, and that the court will decree that the attempted acceptance by the complainant of the trusts of the mortgage without compliance with the laws of the state of Illinois is unlawful, and ineffective to clothe the complainant with the trusts therein declared, and that the mortgage deed is void for want of a grantee or trustee capable in law of taking or holding thereunder, and that the complainant may be enjoined from interfering with the rights, property, and franchises of the Chicago & Northern Pacific Railroad Company, and from transacting any other business within the state of Illinois.

The statute of Illinois (section 26, c. 32, Rev. St.) provides that, "foreign corporations, and the officers and agents thereof doing business in this state, shall be subject to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this state, and shall have no other or greater power, and no foreign or domestic corporation established or maintained in any way for the pecuniary profit of its stockholders or members, shall purchase or hold real estate in this state except as provided for in this act." The act ap-

proved June 15, 1887, as amended by the act approved June 1, 1889, provided as follows: "Any corporation which is or shall be incorporated under the general incorporation laws of this state, being an act entitled 'An act concerning corporations,' and all amendments thereof, for the purpose of accepting and executing trusts, and any corporation now or hereafter authorized by law to accept or execute trusts may be appointed agent or trustee by deed, and executor, guardian or trustee, by will, and such appointment shall be of like force as in case of appointment of a natural person." The second count of the act authorized courts to appoint any such corporation as trustee, receiver, assignee, guardian, conservator, executor, or administrator. The third section provides that such corporations shall not be required to give bond or security in case of appointment, except as provided in the act, but shall be responsible for all investments made by it of funds intrusted to it for investment by the court, and that the amount of money which any such corporation shall have on deposit at any time shall not exceed 10 times the amount of its paid-up capital and surplus, and that its outstanding loans shall not at any time exceed that amount. Section 4 provides that the company shall pay interest on all moneys held by it by virtue of the act, at such rate as may be agreed upon at the time of its acceptance of any appointment of the court, or as may be provided by the order of the court. Section 6 provides that any such company, before accepting such appointment or deposit, shall deposit with the auditor of public accounts, for the benefit of the creditors of such company, the sum of $200,000 in the class of securities mentioned, and that the company shall be entitled to receive from the auditor the interest or dividends upon the deposit so long as the company shall continue solvent. Section 8 provides that it shall not be lawful "for any such company to accept any trust or deposit as hereinbefore provided after the passage of this act, without first procuring from the auditor of public accounts a certificate of authority stating that such company has complied with the requirements of this act in respect to such deposit." Section 9 provides for annual statements to be filed with the auditor, stating the matters specified in the act, being—First, the assets of the company; second, the liabilities of the company; third, a list of the trusts held by such company, the source of the appointment and the amount of real and personal estate held by virtue thereof, "excepting that mere mortgage trusts wherein no action has been taken by such company shall not be included in such statements." The fifteenth section provides that any violation of the provisions of the act shall subject the offending party to a penalty of $500 for each offense, and an additional sum of $100 per day for each day that any such company shall fail to file its report after the last day of January of each year. Section 16 provides for the publication of the annual statement or proper abstract thereof by the auditor, in two newspapers of general circulation, the one printed in the city of Springfield, and the other in the county seat of the county in which the principal office of the company is located.

I have very carefully considered the able arguments presented upon the hearing, and have examined the numerous authorities to which I was referred. I think it sufficient to state the conclusions to which I have come, without any elaboration of the reasons constraining me thereto. I am of opinion—

First. That a mortgage to secure a debt is not within the contemplation or the prohibition of the law.

Second. If the trust deed here involved can be considered to fall within the intendment of the law because of certain trusts therein contained which contemplate that in certain contingencies the trustee shall take possession of, operate, purchase, and acquire title to the real estate covered by the mortgage in the interest and for the benefit of the bondholders, I am of opinion that then such trusts would be held incapable of being enforced by the trustee while in noncompliance with the law of the state, but that the mortgage security of the bondholder would not be invalidated. Pennsylvania Co., etc., v. Bauerle, 143 Ill. 459, 33 N. E. 166; Hervey v. Railway Co., 28 Fed. 169, 175.

Third. The mortgagor company executed this trust deed to the complainant to secure certain bonds which it put forth upon the market as secured thereby. The Northern Pacific Company, in consideration of the lease, convenanted to pay the interest of these bonds. The mortgagor company is estopped, as against the bondholders, to assert that the trustee has not performed the acts necessary to entitle it to assume the trust. It asserted to the world the legal capacity of its appointee. It marketed its obligations upon the faith of that representation. It cannot be permitted now to assert to the contrary. It cannot be allowed to assert a violation of law by itself or by the trustee of its appointment as ground for the nonenforcement of its legal obligation. It is not the conservator of the dignity of the state of Illinois. The Northern Pacific Company took the lease subject to the mortgage, convenanted to pay the interest on the bonds thereby secured, and is in no position to assert its invalidity. It also is estopped.

Fourth. The complainant brings this suit in behalf of the bondholders. They are the parties beneficially interested. The complainant in the prosecution of the suit acts as a mere naked trustee asking the court to enforce the security for the benefit of its cestui que trust. If the instrument can be held to fall within the purview of the acts of Illinois above referred to, since the supreme court of Illinois has held that the disability goes to the right of the trustee to execute the trust, but that the conveyance is not thereby invalidated, I perceive no good reason why the federal court should not open its doors in aid of the bondholders, although coming in the name of the trustee, for the enforcement of rights recognized as valid by the laws and decisions of the state.

It may be that certain trusts contained in the trust deed or mortgage cannot be enforced by the trustee while in contempt of, and until compliance with, the laws of the state of Illinois. I refer to those provisions of the instrument which authorize the trustee to

take possession of, acquire title to, and convey the property. It is not, however, necessary, nor by this bill is it sought, to execute those trusts. If they are void, their invalidity does not necessarily invalidate the instrument as a mortgage. The court will treat it as a mortgage merely, the trustee, as mortgagee, holding the naked legal title to the security, the bondholders being the beneficial owners. The court will enforce the security by judicial sale, not permitting the execution of any trust that may be inoperative until compliance with the law of the state of Illinois. The statute has provided a penalty for the act of the trustee, if its assumption of duty is within the prohibition of the act. That penalty is the measure of punishment which the state saw fit to impose for violation of its laws. It has not undertaken to render void the trust deed or mortgage, or to deny to innocent parties the enforcement of it in protection of their rights. It may be that the courts of the state of Illinois would refuse to recognize the trustee standing in defiance of its laws. I do not think, however, that the duty is imposed upon a federal court to punish innocent parties in vindication of the authority of the state.

With respect to the second ground alleged in the petition of Louis Daenell, I am of opinion that, whether there was a resolution of the stockholders for the issuance of this mortgage, and whether or not it was recorded, is matter with which he is not concerned, and which he has no right to assert.

With regard to the petition of the attorney general of the state of Illinois, I have given to it that consideration which is due to the claim of a sovereign state, but I am not able to apprehend the justice of its position or its right to intervene. It is to be observed that the state has no property interest in the subject-matter of this litigation. It seeks no relief save to enforce the supposed prohibition of the statute, and to prevent the complainant, in behalf of its cestuis que trustent, from invoking the aid of a federal court in enforcing the mortgage security, and this because the complainant accepted the trust without compliance with the law of the state. In plain language, the petition asks a court of equity to deny innocent bondholders, and to declare void, a mortgage securing $30,-000,000 of bonds, because the trustee, with whose selection the bondholders had nothing whatever to do, failed to deposit with the state certain securities to the amount of $200,000 for the protection of its creditors. The state asks a court of equity to declare that a provision of the law which was enacted in the interest of creditors, and as a weapon of defense, shall be turned into a weapon of destruction. It would be strange indeed if any chancellor could be impressed with the equity of the plea, or could bend his mind to such an injustice, unless thereto compelled by positive law. It is undoubtedly the duty of a federal court in every proper case to uphold and enforce the law of the state.

The supreme court of Illinois has, however, held, under the statute here invoked, that the security is not void. Upon the assumption that certain active trusts contained in the mortgage ought not

to be allowed to be enforced by the complainant until compliance with the statute of the state, so far as this court has jurisdiction of the matter, and out of consideration for the supposed policy of the state, it will not lend its aid to their enforcement. But I perceive no equity in refusing to the complainant the right to appear in a federal court to assert, not its own rights, but the rights of bondholders to foreclose the security and for sale of the mortgaged property, because it has rendered itself liable to the state of Illinois in a penalty for accepting a trust without first depositing security. I perceive no equity in visiting punishment upon the innocent to satisfy the violated dignity of the state. The bondholders have infracted no law of the state, and are not accountable for the sin of the Farmers' Loan & Trust Company, if it has violated the law. I do not believe in the doctrine of imputed sin in matters of property. The state of Illinois is able to punish offenders against its law in its own way, and in its own courts. It is not the duty of the federal courts to enforce the penal laws of the state. The difficulty with the position of the attorney general is that the state of Illinois has no property interest in the subject-matter of this litigation. The right of intervention is bottomed upon interest in the subject-matter of the controversy. Here the only interest of the state rests in desire to enforce the statute, and to secure obedience to its law, by preventing the enforcement of private contracts by one violating its law. That is not ground for intervention in equity. A decree will be entered overruling the pleas, and that the intervening petitions of Louis Daenell and of the attorney general of the state of Illinois be filed, docketed, and dismissed for want of equity.