ILLINOIS MERCHANTS TRUST CO., EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF EDWARD E. AYER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17092, 23123, 37200. Promulgated December 21, 1928.

*Hugh W. McCulloch, Esq.*, for the petitioner.
*James A. O'Callaghan, Esq.*, for the respondent.

892

896

897

OPINION.

SIEFKIN: The only issue raised is whether the amounts received by petitioner represented income taxable to him. Counsel for petitioner insists the several agreements herein involved were annuity or endowment contracts, and that the amounts received were return of the capital consideration paid by him under such agreement. Respondent treated the receipts as taxable income. We are without benefit of brief from respondent, who, apparently, interpreted the agreements to be trust agreements, and taxed the payments thereunder, accordingly.

Petitioner directs our attention to the Illinois Revised Statutes, ch. 32, par. 345, *et seq.*, and *Pennsylvania Co. for Insurance on Lives* v. *Bauerle*, 143 Ill. 459; 33 N. E. 166, by which it is established that corporations, not incorporated under the laws of Illinois for the

express purpose of accepting and executing trusts, can not act as trustee in that State. It is urged that none of the corporations named as parties to the agreements in question being qualified to act as trustee under the law, the agreements can not be interpreted as creating trusts. Granting that petitioner is correct as to the law of Illinois as applicable to these corporations, we think the contention based thereon without merit. While the case cited points out the restriction on who may act as trustee, it contains no hint that a trust created would be allowed to fail merely by reason of the naming of a trustee who was not qualified to act as such. It seems clear that a court of equity would appoint a qualified trustee to execute the trust, if such were intended. At any rate, if a trust were intended, it could hardly be contended (in event of its failure) that the transfers of property operated as an absolute conveyance out of petitioner's hands so as to make him unaccountable for any income subsequently derived therefrom.

It is our opinion that the several instruments in question were actuated by the same motive, although there is a marked difference in form between the instrument bearing date of November 14, 1922, and the other agreements. That agreement states:

Mr. Ayer has transferred, assigned and set over, and does hereby transfer, assign and set over to the Newberry Library the sum of One Hundred Thousand Dollars ($100,000) * * * to be held and administered by the Library as a perpetual fund upon the following trusts and the income thereof to be paid out in the following manner.

Such language is ordinarily used to create a trust. We are unable to find anything in the remainder of the instrument that may reasonably be interpreted as expressing a contrary intent. The income is directed to be paid over to the grantor for life, remainder to others for life if they outlive the preceding life estates, with remainder over to be applied to the use of library by its trustees as directed. Provision is made for the reinvesting of the fund in certain contingencies. Such directions and powers are common in trust agreements. Our attention is called to the use of the word "Trustees" only in referring to the governing board of the library. That is true. We do not consider such use indicative one way or the other in the question under discussion. We conclude that the respondent correctly taxed the income received by decedent under this instrument.

The instrument of November 14, 1922, was altered by an agreement under date of February 5, 1925. Petitioner urges that payments made after this alteration are clearly annuity payments, as they are stated sums rather than dependent upon income receipts. But an examination of the later agreement leads to rejection of such contention. It expressly limits the extent of alteration as follows:

\* \* \* The undersigned \* \* \* without altering said agreement, except as hereinafter provided, desire to change the basis of income payments to the individual income beneficiaries therein named so as to provide for an annual payment of Five Thousand Dollars ($5,000) per year to such individual income beneficiaries, respectively, in lieu of the payment to them of the income from the trust funds in said agreement mentioned; \* \* \*

After directions for payment of the substituted amounts to the respective beneficiaries and again stating such payments to be in lieu of the income payments, it further states:

The within agreement as thus amended shall remain in full force and effect and is hereby fully ratified and confirmed.

From these provisions it is clear that all parties concerned recognized the existence of a trust under the earlier agreement and desired to alter only the payment provisions. The two contracts must, therefore, be read together. When so read no intention to abolish the trust appears. We think it is clear that the obligation of the library to pay depends upon the continued availability of trust funds for the purpose. Petitioner's contention is rejected as to payments received pursuant to the amended agreement.

The proper interpretation of the remaining contracts presents a more difficult problem. Though they must be separately considered, the similarity of their provisions (except for differences pointed out below) justifies grouping them for purposes of discussion. That they were drafted without regard to legal phraseology is evident from their contents. For example, the word "bequeaths" which is common to all of them, when read with the context was undoubtedly used in a now obsolete sense, meaning "to appoint, give, or transfer by formal declaration; to transfer or deliver (property) so as to pass at once." See Webster's New International Dictionary.

The respondent has so interpreted the agreements that payments thereunder were taxable to petitioner. No evidence has been introduced to dispel the ambiguity inhering in the several instruments. If we are unable to hold that all of the several possible grounds which may have caused respondent to determine the income to be taxable to the decedent are untenable, we must sustain such determination.

In view of the loose language used in the contracts too much stress can not be placed upon any particular words or phrases. Such restriction tends to lessen the differences in language used in the several contracts. For example, the conditional phrases or clauses closing the several transfer clauses are "under the following conditions" in three of the agreements, and "to constitute a fund to be held under the following conditions." Yet both forms of such closing phrases were used on the same day (June 22, 1920) in different contracts. Such words are words of limitation on the transfer, if

anything at all, and under the circumstances we are unwilling to differentiate between the two different expressions used. Since the alternative contentions that the agreements are annuity or endowment contracts are grounded on the inference that the transfers were absolute, creating a debtor-creditor relation, such words of limitation are indicative, though by no means conclusive, against petitioner.

Another difference in terminology concerning the income for the life of the grantor and the other life beneficiaries must be similarly discounted as indicative of intent. Such provisions read:

| Contract of | Premium |
|---|---|
| June 22, 1920—Art Institute_____ | All income from the said fund shall promptly be paid over [to the life beneficiaries]. |
| June 22, 1920—Field Museum___ | * * * All revenues derived * * * shall be carried in the accounts of said party of the second part, and upon receipt of same by said party of the second part, remittance for the same amount shall immediately be sent [to life beneficiaries]. |
| November 12, 1920_____ | Same as above. |
| November 17, 1922_____ | Same, except " remittance for *this* same amount." |

That the several corporations were to receive the income in the first instance is clear. Whether this income was to be kept separate and paid over to the life beneficiaries is not so clear. The contract of June 22, 1920, with the Art Institute so indicates. Yet, on the same day in a substantially similar contract with the Field Museum, the words used, standing alone, would, perhaps, ordinarily be interpreted to indicate no such segregation was contemplated by the parties. We say " would ordinarily be so interpreted " advisedly, as the words " the same amount " may have been used in the sense of the identical money. That is especially true respecting the contract of November 17, 1922, where the reference is to " this same amount." Under such circumstances we are unable to see that the different language was used designedly to show different shades of intent.

The remaining provisions of none of the contracts are particularly helpful, as they might have been used in annuity, endowment, or trust agreements. For example, granting the right to reinvest is a common provision in a trust agreement. While in an annuity contract the right to reinvest would ordinarily follow, that would not necessarily be so where the annuity payments were measured by the income from the property transferred, at least without some new measure being supplied. Perhaps the form of such latter grant would not, ordinarily, so closely follow the language usually employed in trust instruments. Such form may be indicative, but is not conclusive against petitioner in the instruments under consideration.

Petitioner urges that the payments being measured by the income does not evidence a trust, as annuity payments might likewise be measured. We grant that annuity payments, or payments under a contract equivalent to an annuity contract for our purposes, might well.be measured by reference to such income. In the ordinary case annuity contracts undoubtedly contemplate the recovery of part of the principal of the consideration as well as the income derived from its investment. However, the transfers in this case were obviously prompted largely by charitable motives. We are, therefore, inclined to agree with petitioner's contention that no significance can be attached to the provision that payments be measured by income.

From what has been said it seems clear that little reliance can be placed upon any particular provision of any of the instruments. We must read the respective instruments in their entirety for the apparent intent of the parties. It seems reasonably clear that in each transaction what the parties contemplated was the transfer of the property to the charitable corporations with the understanding that decedent would receive the income therefrom during his life, and such income would be paid to others if they outlived him. This apparent intent would undoubtedly be best served by holding the transfers to have been made in trust. We are not satisfied that the respondent erred in treating the payments as trust income.

Petitioner urges as an alternative contention that the property transferred represented charitable contributions, deductible at least in part. We do not understand petitioner to so contend in the event we approve respondent's determination under the trust theory. In any event, the gift or contribution was limited to remainders after life estates and there are no facts of record by which we can determine the value of the remainders in the years in which the alleged contributions or gifts were made.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MILLIKEN and LANSDON dissent.

PHILLIPS, dissenting: I can not agree with the conclusion reached in the majority opinion that the decedent is not entitled to deduct as contributions the principal amounts given by him to the Field Museum of Natural History, the Art Institute of Chicago and the Newberry Library of Chicago. The gifts of principal appear to have been absolute and the provision for the reservation of a life estate can not, it seems to me, impair the effectiveness or validity of that which was done.

It appears to be the conclusion of the Board that, because a life interest in the income was reserved, that which was given was a remainder interest which must be measured by its present value.

This is a concept which is well recognized in the inheritance tax field and elsewhere where it becomes necessary to value separately life and remainder interests in the same property. The customary procedure in such cases is to value the life interests and use the difference between the value of the property and the value of the life interest as the present value of the future remainder interest. This recognizes that the life interest has a present value, a principle which is not recognized in the revenue acts. *Irwin* v. *Gavit*, 268 U. S. 161; *Codman* v. *Miles*, 28 Fed. (2d) 823.

In the instant proceeding the conclusion is reached, correctly, I believe, that the decedent is taxable upon the income of the principal fund set up by the various agreements. He is to be taxed upon the whole amount, without any deduction for the exhaustion of the value of his life interest by reason of its approaching expiration. Yet we reach the conclusion that the gift must be reduced by the value of this same life interest. It does not seem to me that both positions can be defended at the same time. If the amount of the gift is to be reduced by the present value of the life interest reserved, then a part of the income must represent a return of such value and the decedent should be allowed a deduction for the exhaustion of his life interest. If the decedent is required to return the full income, without any deduction for the principal value of the life interest reserved, then the amount of the gift should not be reduced by any principal value assigned to the life interest. The sum of the parts should equal the whole. In view of the decisions cited above, I am of the opinion that decedent should be allowed as a deduction the value of the securities given by him to the institutions named.